STATE

v.

John FROAIS.

No. 93–667–C.A.

Supreme Court of Rhode Island.

Feb. 3, 1995.

Jeffrey Pine, Atty. Gen., Andrew Berg, and Aaron L. Weisman, Asst. Attys. Gen., for plaintiff.

David M. Cicilline, Providence, for defendant.

## OPINION

PER CURIAM.

This matter came before the Supreme Court on December 12, 1994, pursuant to an order directing both parties to appear and to show cause why the issues raised in the defendant's appeal should not be summarily decided. The defendant, John Froais, (defendant) appeals his convictions of assault with a dangerous weapon and robbery. For the reasons set forth below, we affirm.

In the early morning hours of April 4, 1991, defendant entered the Haven Brothers Diner, located in downtown Providence, with his large rottweiler dog and his friend Michael Belsito (Belsito). Off-duty Providence police officer James Michael Galvin (Galvin) was already inside the diner having a meal. According to Galvin, defendant's unleashed dog began to run excitedly around the diner. The diner's cashier immediately told defendant to remove the dog. However, defendant laughed and began to make light of the situation. At this point another diner employee, as well as the cashier, became involved in a heated conversation with defendant concerning the removal of his dog. Upon seeing the commotion, Galvin testified that he proceeded over to defendant and Belsito, identified himself as a police officer and asked them to remove the dog. After directing some "wisecracks" at Galvin, both men exited the diner taking the dog with them.

After finishing his meal, Galvin proceeded out of the diner and noticed defendant and Belsito accompanied by the unleashed dog standing at the bottom of the steps. The defendant asked Galvin, "You don't like my fuckin' dog?" Galvin responded that the dog had caused a lot of commotion inside the diner. According to Galvin, defendant was holding the dog when it suddenly lunged at him causing him to take a step back. At this point, defendant punched Galvin in the face causing him to fall onto the diner stairs. The defendant and Belsito then began kicking and punching Galvin as he lay on his back.

During the ensuing melee, Galvin's dungaree jacket flew open exposing his holstered handgun. According to Galvin, defendant stated, "[h]e's a cop. He's got a gun. Let's get his gun." Galvin quickly tried to cover the gun with his hand. However, by kicking and punching Galvin, defendant and Belsito were able to break Galvin's hand free from the handgun. The defendant immediately unholstered the gun and pointed it at Galvin's head saying, "I'm going to kill you." The defendant and Belsito then turned and proceeded to flee in a nearby parked van with the gun.

Moments after being attacked, Galvin flagged down a police cruiser operated by Sergeant Robert MacDonald and reported the incident. Shortly thereafter, the van was stopped by the Providence police a short distance from the diner. During a search of the van, Galvin's handgun was found under the seat that defendant had previously occupied.

The defendant, however, disputed this version of events testifying that during an altercation initiated by Galvin outside the diner, defendant's dog growled at Galvin only after Galvin had pushed defendant up against the diner several times. According to defendant, Galvin stated that he was going to blow the dog's head off. At this point, defendant punched Galvin and grabbed his gun. The defendant then proceeded to show the gun to Galvin, laying it out in the palm of his open

hand, and stated that he was going to the police station to turn it in. The defendant and Belsito then turned away, entered their nearby van and proceeded to drive away until being stopped by police. During this entire incident, defendant testified that Galvin never identified himself as a police officer.

On October 20, 1992, following a trial by jury, defendant was convicted of assault with a dangerous weapon and robbery. The defendant now appeals, asserting that the trial justice erred in numerous respects by: refusing defendant's request that the jury be instructed on the lesser included offenses of simple assault and battery, and larceny; admitting hearsay statements without setting forth the relevant hearsay exceptions; and impermissibly asking a state witness his opinion as to the cause of Galvin's injuries.

In the first issue on appeal, defendant contends that the trial justice erred in failing to instruct the jury on the charges of assault and battery as a lesser included offense of assault with a dangerous weapon, and larceny as a lesser included offense of robbery.

■ It is well established that a criminal defendant is entitled to an instruction on a lesser included offense if such an instruction is warranted by the evidence. *State v. Messa*, 594 A.2d 882, 884 (R.I.1991) (citing *State v. Hockenhull*, 525 A.2d 926, 930 (R.I.1987)). An instruction on the lesser included charge is required only when an actual and adequate dispute exists concerning the distinguishing element of the greater and lesser offenses. *Messa*, 594 A.2d at 884 (citing *State v. Brown*, 549 A.2d 1373, 1377 (R.I.1988)).

■ An assault with a dangerous weapon occurs when there is an "unlawful offer to do corporal injury to another under such circumstances as may create a reasonable apprehension of immediate injury unless the person so threatened takes action or inaction to avoid it, coupled with a present ability to carry the offer into effect" by use of a dangerous weapon. *State v. Jeremiah*, 546 A.2d 183, 186–87 (R.I.1988). The offense of simple assault occurs if there is an "unlawful attempt or offer, with force or violence, to do a corporal hurt to another [or to put] * * *

another in fear of violence." *Id.* at 186 (quoting *State v. Ashness*, 461 A.2d 659, 665 (R.I. 1983)). Therefore, the distinguishing element of the two offenses is that an assault with a dangerous weapon requires that a defendant have the actual present ability to inflict harm on the victim by use of a dangerous weapon. *Jeremiah*, 546 A.2d at 186.

■ In the instant case, we are in agreement with the state that the conflicting evidence presented only two questions for resolution. First, whether defendant pointed the gun at Galvin or merely laid it flat in his hand. Second, if in fact defendant pointed the gun at Galvin, whether it was done as an unlawful act of violence or was in self-defense. However, there never was any dispute that defendant had the actual present ability to inflict harm on the victim through the use of a dangerous weapon, that is, Galvin's handgun. *See Jeremiah*, 546 A.2d at 186.

The defendant's contention that the jury could have found that the incident was a simple assault and battery, or, in the alternative, self-defense, up until the point Galvin was disarmed and only then becoming a simple assault and battery, misses this basic point. Our examination concerning a trial justice's refusal to instruct a jury on a lesser included offense is limited to the inquiry of whether an actual and adequate dispute exists as to the distinguishing element between the lesser and greater offenses in question. *Messa*, 594 A.2d at 884; *see Brown*, 549 A.2d at 1378. Where, as here, there is no such dispute, our inquiry is at an end.

The defendant also asserts that the trial justice erred in refusing to instruct the jury on the charge of larceny as a lesser included offense of robbery. Specifically, defendant contends that the jury could have concluded that defendant's use of force to deprive Galvin of his gun was for the purpose of self-defense, and that defendant formed the intent to steal only after taking the gun, thereby committing merely larceny.

■ As we have just noted, in such a circumstance our examination is limited to the question of whether a dispute exists over the distinguishing element between the

greater and lesser offenses. *Messa*, 594 A.2d at 884; *see Brown*, 549 A.2d at 1378. We note that the distinguishing characteristic between robbery and larceny is that the former requires the additional element that the taking be accomplished by force, violence, or intimidation. *State v. Holley*, 604 A.2d 772, 774 (R.I.1992).

■ In the instant case, the use of force was not in dispute. The defendant himself admitted having repeatedly struck Galvin. However, what was in dispute was whether defendant's use of force to dislodge the weapon from Galvin was for the purpose of self-defense and thus giving Galvin lawful possession of the firearm, or was merely to effectuate an unlawful taking of the weapon. *See State v. Austin*, 462 A.2d 359, 366 (R.I.1983) ("[i]f the jury believed defendant's theory, they would find him innocent; [i]f not, he would be guilty of the offense charged"). This dispute had nothing to do with the element that distinguishes robbery from larceny, namely, the use of force, intimidation, or violence to accomplish the taking. *Holley*, 604 A.2d at 774. We are therefore of the opinion that the trial justice did not err in refusing to instruct the jury on the lesser included offense of larceny.

The defendant next contends that the trial justice erred in admitting certain hearsay declarations without setting forth the applicable exceptions by which they were admissible. Specifically, defendant points to statements made by Providence police officers Robert MacDonald (MacDonald) and John McKenna (McKenna). During direct examination, MacDonald testified that Galvin had flagged him down while on routine patrol. According to MacDonald, Galvin approached the police cruiser stating that he had just been "jumped while leaving Haven Brothers' [D]iner." MacDonald then testified that he asked Galvin who had beaten him. The prosecutor followed this answer by asking MacDonald, "what did you learn?" Whereupon defense counsel objected and was overruled without explanation. MacDonald then answered, "[Galvin] told me that the two guys had just jumped him outside Haven Brothers [Diner], and they had left in a white Dodge Caravan." Defense counsel moved to strike

the answer, but the trial justice denied the request, again without explanation.

The defendant now relies on *State v. Dame*, 488 A.2d 418 (R.I.1985), for the proposition that reversible error occurs when a trial justice fails to specifically enunciate the hearsay exception by which a declaration is being admitted. However, our precise holding in *Dame* was that "the statement apparently admitted by the trial justice as part of the *res gestae* does *not come within any recognized exception to the hearsay rule*, and therefore its admission into evidence was error." (Emphasis added.) *Id.* at 424. We believe *Dame* does not establish a per se rule that a trial justice's failure to explicitly delineate the hearsay exception by which a declaration is being admitted constitutes reversible error, regardless of whether the declaration is properly admissible.

■ In fact we have long upheld a trial justice's decision in various contexts even though the specific grounds relied upon by the justice were *erroneous*. *See, e.g., State v. Ellis*, 619 A.2d 418, 425–26 (R.I.1993) (decision to allow the defendant's statement into evidence upheld on different factual findings than trial justice); *State v. Nordstrom*, 529 A.2d 107, 111 (R.I.1987) ("[t]his court on appeal is free to affirm a ruling on grounds other than those stated by the lower-court judge"); *State v. Robertson*, 108 R.I. 656, 663–64, 278 A.2d 842, 846 (1971) (specific objection to a question which is sustained will be upheld on appeal if the answer could be excluded on any other ground even though the trial justice's ruling was based on an erroneous rationale). Therefore, we are of the opinion that reversible error is not committed when a declaration is *properly* admissible under a hearsay exception even though the trial justice fails to specifically set forth the applicable exception by which it is being admitted. However, in an effort to aid counsel during trial and this court on appeal, we believe a trial justice should continue to set forth the applicable exception by which a declaration is being admitted as a matter of course.

■ Turning to the present case, the record reveals that moments after being severe-

ly beaten and while still profusely bleeding, Galvin flagged down MacDonald and related the above information.[1] We have recently held that where a victim makes a statement moments after being brutally attacked "one can reasonably assume that the victim was laboring under the stress of the attack and that the statement would therefore be admissible as an excited utterance under Rule 803(2) of the Rhode Island Rules of Evidence." *In re Paul M.*, 626 A.2d 694, 695 (R.I.1993). With this in mind and from our examination of the record, we are of the opinion that the declaration was properly admissible under Rule 803(2).

■ With respect to McKenna, defendant contends that the trial justice's failure to set forth the relevant hearsay exception by which McKenna's testimony would be admissible constituted reversible error. However, Galvin, the identifying witness, testified to his identification of defendant and was subject to cross-examination concerning the identification. *Cf. In re Daniel*, 456 A.2d 258 (R.I.1983) (child victim's out of court identification of assailant was inadmissible hearsay when offered through the testimony of victim's mother). Therefore, McKenna's testimony concerning Galvin's identification of defendant was properly admissible despite the trial justice's failure to set forth the relevant hearsay exception. Rhode Island Rule of Evidence 801(d)(1)(C); *State v. Long*, 488 A.2d 427, 431 (R.I.1985); *State v. Nordstrom*, 104 R.I. 480, 488–89, 244 A.2d 842, 847 (1968).

■ In the last issue on appeal, defendant contends that the trial justice erred in questioning treating physician, Dr. Anthony Duva, about his opinion as to the cause of Galvin's injuries since the physician had no first hand knowledge of the alleged attack. As a result of the questioning, defendant contends he was improperly and irreparably prejudiced. However, defense counsel never objected to the trial justice's examination. As we have often noted, arguments on appeal that have not been adequately presented to the trial justice for his or her determination can not be properly brought before us. *State v. Donato*, 592 A.2d 140, 141 (R.I.1991); *632 Metacom Associates v. Pub Dennis of Warren, Inc.*, 591 A.2d 379, 381 (R.I.1991); *State v. Burke*, 522 A.2d 725, 731 (R.I.1987).

■ In an effort to avoid application of the "raise or waive" rule, defendant contends that the instant case fits within the narrow exception for "situations in which basic constitutional rights are concerned." *Donato*, 592 A.2d at 141; *accord Burke*, 522 A.2d at 731. However, we are not persuaded that the claim at issue is the type to warrant application of the exception. Our review of the requirements of the *Donato* exception reveal that the third prong of the test, "counsel's failure to raise the issue must be premised upon 'a novel rule of law that counsel could not reasonably have known during the trial,'" has not been met in the present case. *Donato*, 592 A.2d at 142 (in part quoting *State v. Estrada*, 537 A.2d 983, 987 (R.I. 1988)).

We believe that challenges to a trial justice's examination of a witness on the grounds that the questioning tends to create impermissible prejudice because the witness lacked first hand knowledge are not the type of "novel rule of law" that the narrow *Donato* exception was intended to address. Therefore, because defense counsel failed to object and the *Donato* exception is inapplicable, we are of the opinion that defendant's claim was not properly preserved for appeal. *632 Metacom Associates*, 591 A.2d at 381.

Consequently, after hearing the arguments of counsel and reviewing the memoranda that the parties submitted, this court concludes that cause has not been shown. The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

---

1. Doctor Anthony Duva, Galvin's treating physician, testified that as a result of the attack Galvin suffered a deviated septum and severe bruising over extensive parts of his body.