**STATE**

v.

**Estuardo GASPARICO.**

No. 96–59–C.A.

Supreme Court of Rhode Island.

June 10, 1997.
As Corrected Aug. 5, 1997.

Andrea J. Mendes, Aaron L. Weisman, Providence, for Plaintiff.

John F. Cicilline, Vincent Oddo, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

BOURCIER, Justice.

This case is before us on the defendant's appeal from his judgment of conviction following a jury-waived trial in the Providence County Superior Court on one count of assault with intent to commit murder and one count of carrying a pistol without a license.

## I

### Facts and Travel

On July 9, 1993, Edgardo Madrid (Edgardo), was the driver of an automobile en route to an electronics store located in the Olneyville section of the city of Providence. Accompanying him in the vehicle were two relatives and two friends. When the vehicle reached its destination, Edgardo parked in front of the New York System Restaurant near the electronics store. Edgardo and one of his relatives alighted from the vehicle and began walking toward the rear of the car when another vehicle suddenly approached them. When that vehicle came alongside the vehicle that Edgardo and his relative had just exited, three or four gunshots were fired from the approaching car. Edgardo was hit in the groin and stomach and fell, severely wounded. His relative was able to escape unharmed because he had taken cover when the shooting began. The vehicle from which the shots were fired then sped away.

The Providence police were summoned and within several minutes were at the scene. One of the responding officers, James Gallogly (Gallogly), went immediately to assist Edgardo, who appeared to Gallogly to have been mortally wounded. Gallogly noticed that Edgardo's eyes were "rolling" in his head, and he asked Edgardo if he knew who had shot him. Edgardo responded, saying, "Dusk [and] Dume" and added that Dusk lived on Wendell Street. Edgardo then lapsed into unconsciousness. Rescue personnel then transported him to Rhode Island Hospital.

In the meantime, Gallogly relayed the identification information he had received from Edgardo to Stephen Gonsalves (Gonsalves), another officer at the scene. Gonsalves, who was part of the police department's Gang Intervention Unit, immediately recognized Dusk and Dume as names of members in the Latin Kings, a known local

gang. Gonsalves returned to police headquarters and from there determined that the defendant, Estuardo Gasparico (Dusk), lived at 145 Wendell Street. He relayed that information to his sergeant, Paul Kennedy (Kennedy), who then dispatched officers to that Wendell Street address. Kennedy also responded. At the 145 Wendell Street address, the officers knocked on the front door and identified themselves as policemen. A gentleman answered and identified himself as Dusk's father. After having been advised of the purpose for the police visit, Dusk's father invited the officers into the house and told them that Dusk was in his bedroom on the second floor. The police went up to the bedroom and found Dusk, along with a friend, Louis Bruno, also known as Dume (Dume). Since it was only some twenty-five minutes or so following the shooting, Kennedy radioed to the police who were still at the crime scene and requested that they bring the three passengers from the car that Edgardo had been in, and who were also still at the scene, to the Wendell Street address to determine if they could identify either Dusk or Dume as the gunman. A showup identification followed. One of the passengers positively identified Dume as the person he saw firing shots at Edgardo, and also identified Dusk, the defendant here, as having been in the vehicle from which the shots had been fired.

The police, sometime later, went to the hospital where Edgardo was being treated for his gunshot wounds. They were able to learn from him that he had previously known both Dusk and Dume and that Dusk had been the front-seat passenger in the car from which the shots came and that Dume had been seated in the rear of that car. Edgardo also recognized the driver of the car as Chulo, whose real name was William Cruz (Chulo). Edgardo also told the police that he saw Dusk fire one or two shots directly at him, hitting him in the groin area, and that he also saw Dume, seated in the rear passenger seat, aim a gun at him and also fire one or two shots, hitting him in the stomach area.

Criminal information was filed against Dusk, the defendant in this appeal, and Dume, charging them with assault with intent to commit murder, unlawfully discharging a firearm from a motor vehicle, and carrying a pistol without a license on or about their persons or in a motor vehicle. Notwithstanding the joint information, because of what appeared to be apparent antagonistic defenses on the part of the defendants, their cases were severed for purposes of trial. Dume was tried first. He was acquitted by a Superior Court jury. In that trial several witnesses, including Dume himself as well as Chulo, the driver of the vehicle that Dume was alleged by the state to have been in at the time of the shooting, testified that Dume was not in the vehicle at the time of the shooting but had been dropped off earlier. Dusk, the defendant in the appeal presently before us, elected to waive his right to be tried by a jury and was tried by a Superior Court trial justice, sitting without a jury. After the presentation of the state's case in chief, the trial justice granted Dusk's motion for judgment of acquittal on the charge of discharging a firearm from a motor vehicle. Thereafter, at the close of all the evidence, the trial justice found Dusk guilty on the assault with intent to commit murder and carrying a pistol without a license charges. His motion for new trial was denied, and he was later sentenced. This appeal followed.

## II

### Prosecutorial Misconduct

The defendant Dusk's first claim of error is that the trial justice erred in not granting his motion to dismiss all three charges against him because of prosecutorial misconduct, alleging that it was impermissible for the prosecutor to have called different witnesses at his trial from those he had called as witnesses at Dume's trial. At Dume's earlier trial, the prosecution had called Luis Moncada and Marcos Madrid, who had been passengers in the car with Edgardo, to testify. They both testified that it was Dume, and not the defendant, who was the assailant. At the defendant's later trial, however, the prosecution called Chulo and Dume as witnesses, among others. They had both testified for the defense at Dume's earlier trial and had then implicated the defendant, Dusk.

The defendant cries foul and has cited a liturgy of case law that he contends supports his prosecutorial misconduct contention. None of the cases cited by him are, however, controlling to this case. He concedes as much. He asserts nonetheless that the prosecutor in effect actually presented perjured testimony at his trial because he had earlier, at Dume's trial, questioned the truthfulness of the testimony given by both Chulo and Dume. The defendant's characterization of the prosecutor's actions is inaccurate. The defendant fails to realize that the prosecution had consistently alleged, from the time of the indictment, that *both* Dume and Dusk were the perpetrators. At both trials, Edgardo, the victim, testified that both Dume *and* Dusk had fired shots at him, despite the fact that no other witness ever identified two perpetrators. Chulo and Dume both had testified at Dume's earlier trial that only Dusk, the defendant, and not Dume, had shot Edgardo. At that earlier trial the prosecutor understandably questioned the veracity of their testimony because, according to his knowledge of the case facts, their testimony was only partially correct. Therefore, the prosecutor in actuality only questioned that part of their testimony wherein they had exculpated Dume but never doubted that part of their testimony that had inculpated the defendant, Dusk. As a result, since the prosecutor believed as truthful that portion of the testimony previously given by Chulo and Dume that had implicated Dusk, his later calling Chulo and Dume to repeat at Dusk's trial that portion of their earlier testimony that he believed to be truthful, was not the same as presenting testimony known to the prosecutor as being perjured. At the conclusion of Dume's earlier trial the jury found Dume not guilty, implicitly accepting as truthful the testimony of Chulo and Dume, namely, that Dume did not shoot the victim but that Dusk did. Thus, there was no reason for the prosecutor to believe that Chulo and Dume would testify differently at Dusk's trial.

Accordingly, the prosecutor's calling of Dume and Chulo to testify at Dusk's trial was proper and did not constitute prosecutorial misconduct. The defendant has pointed to no obligation on the part of the prosecutor to present the exact same evidence at both trials, and in fact there is none. The prosecutor need not introduce exculpatory evidence as long as he or she does not conceal that evidence from a defendant. *See* Art. V, Rule 3.8, of the Supreme Court Rules of Professional Conduct. As evidenced in argument to this Court, the defendant knew of the witnesses who had testified that it was Dume and not the defendant who had shot Edgardo, so he cannot, and in fact does not, assert that the prosecutor in his case concealed any exculpatory information from him.[1]

Although the defendant is correct in asserting that a prosecutor is a representative of the sovereignty and has an obligation to ensure that justice is done, *State v. Verlaque*, 465 A.2d 207, 214 (R.I.1983), the defendant has not pointed to any conduct on the part of the prosecutor in this case that could be considered to constitute prosecutorial misconduct. A prosecutor has not only the right, but also the obligation, to present the strongest possible case against any defendant who is being tried. *See* Art. V, Preamble to the Supreme Court Rules of Professional Conduct. Accordingly, we conclude that there was no prosecutorial misconduct and that the trial justice did not err in denying the defendant's motion to dismiss the charges against him.

### III

### Cross–Examination of Edgardo Madrid

The defendant's second claim of error is that the trial justice impermissibly restricted his right to cross-examine Edgardo, the victim, about his past marijuana use. Although the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution guaran-

---

1. If the trials of Dume and the defendant had not been severed, then the same evidence would have been presented against both of them and this problem never would have arisen. However, since the trials were severed, the prosecutor was free to present different evidence in each trial.

tees a defendant the right to cross-examination, *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), that right is not unlimited. *State v. Brennan,* 526 A.2d 483, 488 (R.I.1987). Irrelevant questions and lines of questioning that offer to produce no probative evidence need not be permitted by the trial justice and may be properly limited. *Id.* Additionally, "[l]imiting the extent and scope of cross-examination is within the sound discretion of the trial justice, and any such ruling by a trial justice will be left undisturbed by this court absent a showing of clear abuse of that discretion." *State v. Veluzat,* 578 A.2d 93, 95 (R.I.1990).

On cross-examination, defense counsel asked Edgardo, the victim, whether Frank Chacon (Chacon), one of the other passengers in the car with Edgardo on July 9, 1993, had been drinking on the day in question. Edgardo responded that he did not recall. Defense counsel then introduced Edgardo's prior testimony that had been given at Dume's earlier Family Court hearing in an attempt to refresh his memory. That prior testimony indicated that Chacon had not been drinking on July 9, 1993. Part of that prior testimony, however, included a statement by Edgardo that "[a]ll the ones that with me I'm the only one has used marijuana." The prosecution promptly objected to the reference to Edgardo's past marijuana use because it was irrelevant. The trial justice sustained that objection. Later, on re-cross-examination, Edgardo was asked, "[D]o you take drugs?" and Edgardo responded, "[N]o." Defense counsel then attempted to impeach him by introducing evidence that when he was admitted to the hospital on July 9, 1993, Edgardo, in providing his medical history, had told a nurse or doctor that he had used drugs in the past. The prosecutor objected, and the trial justice sustained that objection. The trial justice determined and concluded that Edgardo's medical history would not provide him with any relevant evidence because it did not suggest that Edgardo had used drugs on July 9, 1993,[2] and was not inconsistent with his trial testimony.

■ "[T]he findings of fact of a trial justice sitting without a jury are accorded great deference." *Rowland Family Trust v. Pelletier,* 673 A.2d 1081, 1083 (R.I.1996)(quoting *State v. Shatney,* 572 A.2d 872, 876 (R.I.1990)). *See also State v. McKone,* 673 A.2d 1068, 1075 (R.I.1996). Accordingly, since the purported drug use referenced in the medical history and sought to be introduced by the defense was not inconsistent with Edgardo's prior trial testimony and because there was no evidence whatsoever that Edgardo had taken drugs on July 9, 1993, or at any other time thereabouts, such that the drug use would have affected his ability to observe and recall accurately the events on the day when he was shot, we find no error in the trial justice's ruling precluding the introduction of Edgardo's medical history.

## IV

### Edgardo Madrid's Statements to Luis Torres and Officer James Gallogly

The defendant's next claim of error is that the trial justice erred in admitting statements made by Edgardo to Luis Torres (Torres), another passenger in the vehicle driven by Edgardo, and his statement to Gallogly that identified Dusk and Dume as the alleged perpetrators. The court admitted those statements pursuant to the excited utterance exception to the hearsay rule as codified in Rule 803(2) of the Rhode Island Rules of Evidence.

■ When Edgardo made his statements implicating Dume and the defendant, Dusk, he had just been shot three times in the abdominal and genital area. His eyes were rolling in his head, and he was begging to be brought to the hospital, fearing that he was about to die. The challenged statement he made to Torres was made almost immediately after he had been shot, and his challenged statement made to Gallogly was made only a short time thereafter. In fact, after making his statement to Gallogly, Edgardo lost consciousness and was unable to communicate

---

**2.** Evidence of drug use on July 9, 1993, would arguably have been relevant because the drug use could have impaired his ability to perceive the events of that day.

further. After examining all this evidence, the trial justice concluded that Edgardo's statement qualified as an excited utterance pursuant to Rule 803(2). That determination, we cannot say was clearly wrong, and will not be disturbed by this court. *State v. Perry*, 574 A.2d 149, 151 (R.I.1990). We sustain the trial justice's ruling.

■ "[W]here a victim makes a statement moments after being brutally attacked 'one can reasonably assume that the victim was laboring under the stress of the attack and that the statement would therefore be admissible as an excited utterance under Rule 803(2) of the Rhode Island Rules of Evidence.'" *State v. Froais*, 653 A.2d 735, 739 (R.I.1995). In *Froais* an off-duty police officer flagged down a police cruiser moments after having been severely set upon by two men and attacked by a large Rottweiler. In that case we held that the statements made by the off-duty police officer to the officer driving the police cruiser that had flagged-down were admissible under the excited utterance exception. We noted as relevant the closeness in time between the statements and the assault incident as well as the fact that the off-duty police officer was bleeding profusely and therefore still laboring under the stress of the situation when he made his statements. A similar factual situation existed in this case. Edgardo had just been shot a fraction of a second before Torres came to his assistance and within one or two minutes before Gallogly arrived at the scene and asked if he knew who had shot him. He was still bleeding from his three gunshot wounds, and his eyes were rolling in his head. It was certainly not unreasonable for the trial justice to have concluded that Edgardo was still laboring under the stress of the attack when he made his statements regarding who had shot him to Torres and Gallogly. Those statements were admissible pursuant to the excited utterance exception, often referred to as "the spontaneous utterance rule."

■ It "embraces statements which are uttered under the stress of excitement produced by a startling event and made before the declarant has had an opportunity to reflect or contrive." *Martin v. Estrella*, 107 R.I. 247, 257, 266 A.2d 41, 48 (1970).

■ The defendant contends that because the trial justice did not make a specific finding that Edgardo did not have time to reflect upon and to contrive to misrepresent the happenings, his statements should not have been admitted pursuant to the excited utterance exception. That contention is without merit. In *Froais, supra*, we held that there was no "per se rule that a trial justice's failure to explicitly delineate the hearsay exception by which a declaration is being admitted constitutes reversible error, regardless of whether the declaration is properly admissible." 653 A.2d at 738. Implicit in that holding is the conclusion that even when a trial justice fails specifically to mention each element in an exception to the hearsay rule, he or she does not necessarily commit reversible error if the challenged statements are otherwise admissible.[3] We conclude, on the basis of the evidence in this case, that Edgardo's statements were properly admitted pursuant to the excited utterance exception to the hearsay rule and that the trial justice's failure to address each element giving rise to that exception does not constitute reversible error.

## V

### Rule 106 of the Rhode Island Rules of Evidence

The defendant's next claim of error is that, pursuant to Rule 106 of the Rhode Island Rules of Evidence, the trial justice erred in refusing to permit the entire transcript of the testimony of Marcos Madrid (Marcos), Edgardo's brother, given at Dume's earlier trial

---

3. The trial justice also indicated that Edgardo's statements might have been admissible as a dying declaration pursuant to Rule 804(b)(2) of the Rhode Island Rules of Evidence. We need not address the applicability of that exception to the facts presented in view of our concluding that the statements were properly admitted under the excited utterance exception, although arguably the statements would have been admissible under the dying declaration exception since the death of the declarant is no longer necessary to implicate the exception. *See State v. Pailin*, 576 A.2d 1384, 1386 (R.I.1990).

to be admitted as a full exhibit. Rule 106 provides:

"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

■ In this case, Marcos was called as a defense witness. Marcos had been a passenger in the car driven by Edgardo. On direct examination the defendant introduced portions of Marcos's prior testimony from Dume's trial. The portions of that testimony introduced by the defendant related to whether, on the day of the shooting, Marcos was able to identify the person wearing a shirt (the defendant-Dusk) or the person not wearing a shirt (Dume). In this case on cross-examination, the prosecutor also questioned Marcos about who was wearing a shirt and who Marcos identified at the showup identification. At that point, defense counsel objected and moved to have the entire transcript of Marcos's prior testimony admitted as a full exhibit. The trial justice denied that motion for reason that it was the defendant, and not the adverse party, as required by the plain language of Rule 106, that had introduced the prior testimony relating to who was identified at the showup identification. Thus, the trial justice concluded that the defendant could not take advantage of Rule 106, which was intended to allow an *adverse* party to introduce other portions of a record first introduced by the other party. We agree that Rule 106 is not available to the person introducing the record in the first instance. Accordingly, the trial justice properly refused to admit the entire transcript of Marcos's prior trial testimony as a full exhibit.

## VI

### Olivo's Statement

The defendant has waived his alleged claim of error on the part of the trial justice in refusing to admit as a full exhibit the witness statement given by Richard Olivo (Olivo), an independent witness to the shooting. In re-

visiting the record, the defendant has now apparently realized that Olivo's statement had in fact been admitted as a full exhibit during the trial. We therefore need not address that issue.

## VII

### Conclusion

For all the above reasons, the defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.

GOLDBERG, J., did not participate.