STATE

v.

Robert GORE.

No. 2000–47–C.A.

Supreme Court of Rhode Island.

March 31, 2003.

Aaron L. Weisman, Virginia M. McGinn, Providence.

Paula Rosin, Kelly Monteiro, Providence.

## ORDER

This case came before the Supreme Court on February 4, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

On October 24, 1997, defendant, Robert Gore (Gore or defendant), was charged by criminal information, with several crimes relating to a domestic altercation with his then girlfriend, complainant Joyce Bullock (Bullock or complainant). Specifically, defendant was charged with three counts of domestic assault with a dangerous weapon in a dwelling house with intent to murder in violation of G.L.1956 § 11–5–4.[1] Count 1 alleged that defendant committed an as-

sault with intent to murder with a knife as the dangerous weapon; count 2 alleged the use of a cord or string; and count 3 alleged that the dangerous instrumentality was defendant's hands. Additionally, count 4 charged simple assault and battery against a police officer, arising from defendant's arrest, and count 5, possession of marijuana, was later dismissed. The defendant was acquitted on count 2, assault with a dangerous weapon with intent to murder by use of a cord or string, but was convicted of the lesser-included offense of assault with a dangerous weapon in violation of § 11–5–2. The defendant was also convicted of count 3, assault with a dangerous weapon with intent to murder by use of his hands, and acquitted of the remaining offenses. The trial justice sentenced defendant on count 2 to twenty years at the Adult Correctional Institutions, with twelve years to serve and eight years suspended with probation, and on count 3, a concurrent term of thirty years, twelve years to serve, the balance suspended with probation.[2] The defendant has appealed.

In the early morning hours of April 12, 1997, there was a domestic altercation between defendant and complainant.[3] During the previous evening, the couple had consumed several alcoholic beverages together at a bar, but departed separately after a minor disagreement erupted between them. Later at home, defendant and complainant began to fight and defendant became physically abusive, choking

---

1.  General Laws 1956 § 11–5–4 provides:

    "**Assault with dangerous weapon in dwelling house.**—Whoever, being armed with a dangerous weapon, assaults another with intent to rob or murder, shall, if the assault is committed within a dwelling house, be punished by imprisonment in the [A]dult [C]orrectional [I]nstitution[s] for not less than ten (10) years to life."

2.  The trial justice also directed that Gore attend a domestic violence program and further ordered that he have no contact with complainant.

3.  Gore is six-feet, two-inches tall and weighs 170 pounds. Bullock is an asthmatic who is five-feet, two-inches tall and weighs 112 pounds.

Bullock with his hands. She also testified that defendant struck her with a piece of wood and pushed her through the coffee table, breaking its frame. Although Bullock was temporarily able to escape defendant's assault, he regained control of her, placed his knee on her chest, and choked her again using both hands. The defendant eventually desisted and ordered Bullock to remove her clothes. According to Bullock, when she refused, Gore "picked up a butcher knife * * * and he put it to my throat." Bullock then agreed to remove her clothing if Gore put down the weapon. Although Gore complied, complainant testified that he then wrapped a boot cord or string around her throat and attempted to strangle her.

After a lengthy struggle, Bullock escaped the couple's apartment and notified the police who discovered Gore hidden under the porch of the apartment and arrested him. The complainant was taken to the hospital by rescue where she remained for two-and-a-half days. The initial examination of Bullock revealed "multiple bruises of her face and abrasions of her neck and a mark on the neck which looked like it probably had been inflicted by some kind of cord or rope[.]" The examining physician testified that Bullock had sustained multiple bruises, a black eye, a contusion of the kidney and some internal swelling of the vocal cords that was treated with medication.

The defendant presents a markedly different version of the altercation. At trial, Gore testified that he returned to the apartment on the night of the incident intending to retrieve his personal belongings and spend the night at a hotel when Bullock threw one of his bags on the floor.[4] Gore admitted that he "grabbed [Bullock] from behind by her neck" with his hands and told Bullock to remove her clothes. However, defendant denied using a knife or striking her with a piece of wood; defendant also denied threatening to kill Bullock but admitted that Bullock sustained injuries when he pushed her and she struck her head.

The defendant raises two issues on appeal. First, with respect to count 2, for which he was convicted of the lesser-included offense of assault with a dangerous weapon, Gore challenges the refusal of the trial justice to instruct the jury on simple assault. Based on the evidence presented, Gore argues that a jury could have found him guilty of simple assault. The defendant argues that a cord is not an inherently dangerous instrumentality and therefore, the determinative fact was whether it was used in a manner likely to produce serious bodily injury or death. Gore suggests that on the basis of this record, a jury could believe that he used this weapon in a manner not likely to produce death or serious injury. He points to the evidence that he inflicted the more serious injuries with his hands and contends that the fact that he wrapped the cord around the neck of the victim and tightened it, causing visible marks to the skin, raises a question about the manner in which he used the string. We reject this argument. Whether a defendant has committed an assault with a dangerous weapon is not dependant on the nature and extent of his victim's injuries.

A defendant is entitled to a jury instruction in accordance with the law relevant to the issues raised by the parties and the evidence presented. A lesser-included offense instruction is available only if warranted by the evidence adduced at trial.

4. This bag was alleged to contain bottles of scented oils worth several hundred dollars.

*See State v. Fr4ais*, 653 A.2d 735, 737 (R.I.1995) (citing *State v. Messa*, 594 A.2d 882, 884 (R.I.1991)). The evidence must point to an actual and adequate dispute concerning the distinguishing element(s) between the lesser and the greater offenses in question. *Id.*

The differentiating element between an assault and an assault with a dangerous weapon "is that an assault with a dangerous weapon requires that a defendant have the actual present ability to inflict harm on the victim by use of a dangerous weapon." *Froais*, 653 A.2d at 737 (citing *State v. Jeremiah*, 546 A.2d 183, 186 (R.I.1988)). It does not turn, as defendant suggests, on the nature and extent of the victim's injuries, or indeed on whether injury resulted, but whether the instrumentality was used in such a way that it could produce serious bodily injury. *See State v. Zangrilli*, 440 A.2d 710 (R.I.1982) (hands constituted dangerous weapons when used in such a way that may have produced a victim's death or serious bodily injury). The test is not whether serious bodily injury results from the assault, but whether the object was so used that serious bodily injury *may* have resulted. *State v. Mercier*, 415 A.2d 465, 467 (R.I.1980). (Emphasis added.) We are of the opinion that a cord or string, although not intrinsically dangerous, is certainly capable of producing serious injury or death when it is wrapped around a victim's neck and tightened. This act can be characterized as attempted strangulation by ligature, certainly conduct that can readily lead to death.

The defendant also contends that the trial justice failed to articulate sufficient reasons for denying the motion for a new trial and that he overlooked and misconceived material evidence. The defendant claims that when the trial justice consid-ered the existence or absence of material factual evidence and the credibility of witnesses he did not sufficiently articulate his reasoning. Although the trial justice stated that he believed the complainant's version of the events, defendant suggests that he seemed to cast some doubt on Bullock's testimony by stating that her testimony was "not so unbelievable." Gore also argues that the trial justice was equivocal in his analysis of the evidence by his use of the terms "I believe" and "If I'm not mistaken." Further, he claims the trial justice overlooked or misconceived evidence about the duration of the incident and the fact that Gore stopped the assault of his own volition. In short, defendant posits that if he intended to kill complainant, he would have done so. We deem this argument to be without merit.

In deciding a motion for new trial, the trial justice must determine whether there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt. *State v. Rieger*, 763 A.2d 997, 1001 (R.I.2001). The trial justice often serves as a "thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Banach*, 648 A.2d 1363, 1367 (R.I. 1994).

In this case, there was little dispute about the defendant's conduct; he admitted that he strangled Bullock with his hands and with a boot string, thus obviating the need for the trial justice to reiterate the testimony adduced at trial. We are satisfied that the trial justice decided to believe the complainant's version of the events that night and rejected the defendant's testimony. He found the complainant to be a credible witness and was unsure about the defendant's testimony. The trial justice concluded that the state

had presented sufficient evidence to establish the defendant's guilt for the crimes for which he was convicted and that the jury followed and understood his instructions in reaching their verdicts. We see no reason to disturb these findings. In denying the defendant's motion for a new trial, the trial justice neither overlooked nor misconceived the evidence, nor was he otherwise clearly wrong.

Accordingly, the defendant's appeal is denied and dismissed and the judgment of conviction is affirmed. The papers in this case may be remanded to the Superior Court.