DECISION
This matter is before the Court on the motion of Subaru of America ("Subaru") for summary judgment pursuant to Super. R. Civ. P. 56. Jurisdiction is pursuant to G.L. 1956 § 6-13.1-5.2.
 Facts and Travel
This is an action brought under the Rhode Island Deceptive Trade Practices Act, codified at § 6-13.1-1, et seq. ("RIDTPA"). Joseph Chen ("Plaintiff"), appearing pro se, is the fourth owner of a 1995 Subaru Impreza sedan that is equipped with front-wheel drive and a manual transmission. The clutch began to slip badly, and Plaintiff brought the vehicle to Pat's Auto Center ("Pat's"), a repair shop in Westerly, Rhode Island. Plaintiff informed Pat's that the clutch replacement must be complete by the afternoon of June 20, 2005, because the lease on his apartment was up and he had to be in New York that evening for a job interview. Pat's told Plaintiff that if he brought the car in on the morning of June 20, it would be ready for him that afternoon.
Plaintiff in fact brought his car to the shop early on the morning of the 20th. However, when Pat's had disassembled the clutch assembly, they discovered that it was different from the replacement part that they had ordered for Plaintiff's car. The replacement part was the one *Page 2 
specified in the factory service manual for a 1995 Subaru Impreza. It appears that Pat's attempted to install the replacement part but that it did not fit onto the transmission in Plaintiff's vehicle as the original clutch assembly was quite a bit larger than the new part. Needless to say, Plaintiff's vehicle was not ready by the afternoon.
Plaintiff contacted multiple Subaru dealers in an attempt to figure out which clutch assembly had been installed in his car. Over the course of several days Plaintiff learned that Subaru did not always install the parts that were specified in the factory's manual, particularly for cars in its 1995 model year. In an apparent move to save money, Subaru sometimes installed parts that it had on hand but were specified for installation in other vehicles. Subaru referred to these internally as "interchangeable parts," but did not inform dealers or repair shops that certain vehicles may contain such parts or provide any sort of cross-referencing information to allow a determination of which part had been installed.
Thus, when the repair shop looked up the part number for Plaintiff's clutch assembly the only information returned was the part number for a clutch assembly for a 1995 Subaru Impreza with front-wheel drive. It took several days before Pat's and Plaintiff were able to determine that the clutch assembly that had been fitted to his car was actually from a 1993 Subaru Impreza with four-wheel drive. It also appears that the entire transmission in Plaintiff's car was from a 1993 four-wheel drive Subaru, which explains why the clutch assembly differed between the vehicles and why it was impossible to install the 1995 clutch assembly in the car. Putting the difficulty in terms of the terminology used by the parties, the transmission (as a whole) from a 1993 four-wheel drive Subaru is an interchangeable part with the transmission from a 1995 two-wheel drive Impreza, but the clutch assembly from the 1993 four-wheel drive transmission is not interchangeable with the clutch assembly on the 1995 front-wheel drive transmission. *Page 3 
Plaintiff's vehicle was finally repaired on June 22, 2005. During the time when he was without a vehicle, Plaintiff alleges that he suffered monetary losses in that he was forced to get around by taxi for two days. He also claims that the lease on his apartment was up and he was required to vacate the premises on June 20; thus, he ate several meals at restaurants, and he would not have done this had he been able to go to New York that evening. Plaintiff further alleges that he was unable to make it to a scheduled job interview on Long Island on the evening of June 20 and that he therefore lost an employment opportunity.
Plaintiff thereafter filed a complaint against both Pat's and Subaru. The complaint alleges breach of contract against Pat's because one of the alleged conditions of the agreement was that the work would be completed by the afternoon of June 20. Plaintiff also claims that Pat's misrepresented the price of the clutch assembly. According to Plaintiff, Pat's service manager told Plaintiff that the cost of the part was $360 and that Pat's would charge him $360 for the part, thereby realizing no profit on the sale of the part itself. Plaintiff claims that the actual retail price of the part is $250.
Plaintiff's count against Subaru claims that Subaru installed the incorrect transmission and clutch assembly in his 1995 model-year car out of "non-care" and that Subaru "wrongfully" failed to disclose that a so-called interchangeable part had been installed on his vehicle. Plaintiff filed an amended complaint on September 11, 2006, in which he specifically relies on the RIDTPA, claiming that selling a 1995 model car with running gear from a 1993 vehicle constitutes a deceptive trade practice. (See Amended Complaint, ¶ 1, "Jurisdiction.")
This Court granted Pat's Motion for Summary Judgment on June 16, 2008. The Court deferred ruling on Subaru's Motion in order to give further consideration to the issue of whether *Page 4 
Subaru's auto sales are regulated by the Motor Vehicle Code, thereby exempting Subaru's conduct from the RIDTPA.
 Standard of Review
It is well-settled that in ruling on a motion for summary judgment, the motion justice should construe all evidence in the light most favorable to the non-moving party. If after considering the evidence, the motion justice concludes that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Sakonnet Point MarinaAss'n v. Bluff Head Corp., 798 A.2d 439, 441 (R.I. 2002); McKinnon v.Rhode Island Hospital Trust National Bank, 713 A.2d 245, 247 (R.I. 1998).
 Analysis
Subaru argues that Plaintiff does not have standing under the RIDTPA. Subaru first asserts that the RIDPTA requires there to have been a "sellor/vendor" relationship and that it is uncontested that Plaintiff purchased his vehicle not from Subaru, but from a private party. According to Subaru, Plaintiff must show that he himself purchased or leased the car from Subaru in order to have standing.
Subaru next argues that the RIDTPA requires a plaintiff to show that he has suffered an ascertainable loss of money or property and that Plaintiff has failed to do so. Plaintiff has alleged that he suffered the "loss of 50 hours" of his life, that the attempt to get his car repaired was a "traumatic" experience, that he lost the use of his car for three days, and that he lost out on a "business opportunity" in New York. According to Subaru, none of these alleged damages has resulted in an ascertainable monetary loss and, therefore, Plaintiff has no standing. *Page 5 
Finally, Subaru argues that it is exempt from the provisions of the RIDTPA because it is regulated by the Rhode Island Motor Vehicle Code. Plaintiff specifically relies on G.L. 1956 § 31-5.1-1 et seq., Regulation of Business Practices Among Motor Vehicle Manufacturers, Distributors, and Dealers. Subaru also cites a Federal District Court case interpretation of that chapter which held that conduct under that section appears to be monitored by the Rhode Island Department of Administration.
In rejoinder, Plaintiff asserts that Subaru had already raised these arguments in a motion to dismiss that was heard by another Justice of this Court. The motion justice found that Plaintiff did have standing under the RIDTPA and denied the motion to dismiss. In fact, Plaintiff argues that Subaru's current motion seems to be copied "word by word" from its prior motion to dismiss.
According to Plaintiff, the motion justice found that Plaintiff was not required to have personally bought the vehicle from Subaru in order to have a valid claim under the Act. Plaintiff also argues that the motion justice previously found that Plaintiff had in fact alleged an ascertainable monetary loss due to the allegedly deceptive practice. As an example of his monetary loss, Plaintiff directs the Court's attention to his affidavit wherein Plaintiff states that he paid for several taxi rides during the time in which he was without the use of his car.
This Court first notes that Plaintiff is mostly correct in his contention that Subaru's current motion for summary judgment is nearly identical to Subaru's prior motion to dismiss. Comparison of the motions reveals that Subaru has already argued that Plaintiff has no standing under the RIDTPA because Plaintiff did not purchase the car from Subaru and/or Plaintiff has not suffered any ascertainable monetary losses. The file further reveals that, rather than filing a *Page 6 
responsive answer to Plaintiff's complaint, Subaru instead opted to file a motion to dismiss on October 16, 2006. That motion was denied after a hearing on February 19, 2007.
An order prepared and filed by Subaru's attorney on February 22, 2007, and entered on February 28, 2007, stated that Subaru's motion was denied "without prejudice." Nothing in the file indicates why the motion was denied without prejudice, nor has any party submitted a transcript of that hearing. Further examination of the file reveals that Plaintiff prepared an order on February 23, 2007, which stated that Subaru's motion to dismiss was "denied," thereby indicating that such denial was with prejudice. Plaintiff's order was never signed or entered by the Court. Thus, despite the apparent contradiction of the parties' understanding of the motion justice's ruling on February 19, the only order entered denied the motion without prejudice. Subaru, therefore, is not precluded from raising the same arguments in its motion for summary judgment.
Subaru first argues that for conduct to be actionable under the RIDPTA it must be shown that a plaintiff purchased goods from a defendant. Because it is uncontested here that Plaintiff purchased his car from a private party and not from Subaru, Subaru claims that Plaintiff is unable to maintain a cause of action.
The jurisdictional statutory language provides that
 [a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2, may bring an action under the Rules of Civil Procedure in the superior court of the county in which the seller or lessor resides, is found, has his or her principal place of business, or is doing business, or in the superior court of the county as is otherwise provided by law, to recover actual damages or two hundred dollars ($200). Section 6-13.1-5.2. *Page 7 
Despite Subaru's assertions, nothing in the plain language of that section requires a direct vendor/consumer relationship before a cause of action may be maintained. Rather, the section is broadly drafted to include "any person who purchases or leases goods primarily for personal, family or household purposes." Significantly, the statutory language referring to the "seller" appears in the context of selecting the proper forum in which the action is to be brought. Nowhere does the section state that only the first purchaser of a good has a cause of action.
While Subaru has cited several cases to support its proposition that a direct consumer/vendor relationship must be established, all of those cases are easily distinguishable. In ERI Max Entertainment, Inc. v.Streisand, 690 A.2d 1351, 1353-1354 (R.I. 1997), our Supreme Court upheld the dismissal of a corporation's claim under the RIDPTA because the Act confers a private cause of action on individuals only and a corporation "plainly does not have standing to bring a private action under this statute." Similarly, in Magnum Defense, Inc. v. Harbour GroupLtd., 248 F.Supp.2d 64, 71 (D.R.I. 2003), the District Court dismissed a claim under the RIDTPA that had been brought by a corporation, not a private individual. Finally, in Kelley v. Cowesett Hills Assocs.,768 A.2d 425, 431 (R.I. 2001), the Court held that a tenant cannot maintain an action against a landlord under the RIDPTA because there is no "consumer/vendor relationship."
Not only are all of these cases obviously distinguishable from Plaintiff's case, but the Kelley Court stated that in order to have a valid claim "a plaintiff must establish that he or she is a consumer, and the defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce." Id. Here, Plaintiff is clearly a consumer and there can be no argument that Subaru is not a seller engaged in trade or commerce. Admittedly, although the Plaintiff satisfies the Court's articulation of the standard inKelley, that Court was *Page 8 
not presented with a factual situation involving the fourth owner of a motor vehicle. Still, Subaru has not presented this Court with any authority for its interpretation of the RIDTPA requiring a direct vendor/consumer relationship.[1] Given the foregoing, this Court concludes that the Plaintiff does have a cause of action even though he is not the vehicle's original purchaser.[2]
Subaru next argues that Plaintiff does not have standing under the plain language of § 6-13.1-5.2 because he has not suffered any ascertainable damage due to Subaru's allegedly deceptive practice of installing a 1993 transmission in a 1995 Impreza without providing notice to the ultimate consumer that it had done so. Indeed, Plaintiff's amended complaint does not allege any actual monetary losses. Rather, it asserts a claim for loss of "50 hours of Plaintiff's life," for the loss of the use of his car for three days, for emotional damages, and for loss of an employment opportunity. While the complaint does not allege an ascertainable loss, Plaintiff testified in his deposition and averred in his affidavit that he was forced to take a taxi cab on at least two occasions due to the loss of use of his car. This would apparently qualify as an ascertainable monetary loss; and if proven at trial, the pleadings could easily be amended to conform with the evidence. Note also that Plaintiff only has to prove any ascertainable loss at all, as even nominal damages are enough to support a claim under the RIDTPA.Park v. Ford Motor Company, 844 A.2d 687, 693 (R.I. 2004). *Page 9 
Pre-Emption of the RIDTPA by the Motor Vehicle Code
The RIDTPA explicitly provides that "[n]othing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States." Section 6-13.1-4. In determining whether the conduct at issue is exempt from the RIDTPA, "step one of the exemption analysis requires the party claiming the exemption to demonstrate that the general activities complained of are subject to monitoring or regulation by a state or federal government agency." Lynch v. Conley, 853 A.2d 1212,1214 (R.I. 2004). If a party claiming exemption is successful in showing that the general activity is regulated or monitored by a government agency, the party seeking to maintain its action under the RIDTPA then bears the burden of showing that the specific acts complained of are not subject to monitoring or regulation. Id.
Here, Subaru argues that it is exempt from the RIDTPA pursuant to § 6-13.1-4 because its conduct is regulated by other Rhode Island statutes. Subaru specifically relies on § 31-5.1-1 et seq. in the Motor Vehicle Code, which states that the chapter applies to "any person who engages directly or indirectly in purposeful contacts with this state in connection with the offering or advertising for sale of, or has business dealings with respect to, a motor vehicle within the state." Section 31-5.1-2. Subaru appears to argue that the general activities subject to regulation are its "`business dealings with respect to' motor vehicles within the State of Rhode Island." (Subaru's Memorandum in Support of its Motion for Summary Judgment at 12 (quoting § 31-5.1-2)) Section 31-5.1-1 et seq. also empowers the Department of Administration to make rules and regulations interpreting its provisions. Section 31-5.1-3(c). However, the explicit *Page 10 
statutory language also restricts its application to "[u]nfair methods of competition, and unfair or deceptive acts or practices, as defined inthis chapter . . ." Section 31-5.1-3(a) (emphasis added).
Subaru's argument that it is exempt from the RIDTPA is unavailing because perusal of § 31-5.1-1 et seq. reveals that the chapter governs the relationship between motor vehicle manufacturers and franchise owners. While the statute does provide that "[i]t shall be deemed a violation of this chapter for any manufacturer or motor vehicle dealer to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties involved or to the public," § 31-5.1-4(a), a "violation of this chapter" is defined as a manufacturer's coercion or attempted coercion of a dealer. Section 31-5.1-4(b) (providing that it is "a violation of this chapter" for a manufacturer "to coerce, or attempt to coerce, any motor vehicle dealer" into taking certain enumerated actions). Thus, far from regulating Subaru's conduct with regards to the ultimate consumers of its goods, the chapter only regulates its activities when it is dealing with its franchisees (i.e. Subaru dealerships). An examination of the chapter as a whole therefore indicates that it is only intended to prohibit certain activities by a manufacturer with respect to its dealers.[3] Subaru's alleged conduct here — deceptively failing to inform the ultimate consumer that a 1995 two-wheel drive Impreza contains a transmission from a 1993 four-wheel drive Impreza — is not in any way controlled by the sections of the Motor Vehicle Code cited by Subaru.
Moreover, our Supreme Court has previously allowed a consumer to proceed with a suit against a motor vehicle manufacturer that is predicated upon a violation of the RIDTPA. The plaintiff consumer inPark v. Ford Motor Company, 844 A.2d 687 (R.I. 2004), was allowed to *Page 11 
maintain a class action against the manufacturer under the RIDTPA. In that case, the plaintiff alleged that when he purchased his Ford Ranger, the window sticker had indicated that the vehicle was equipped with a "Securilock" security system. Park, 844 A.2d at 689. The Securilock system had been advertised as a $100 option on other vehicles.Id. After purchasing the vehicle, the plaintiff discovered that the Ranger was not equipped with the advertised security system when he attempted to activate it and nothing happened. Id. The plaintiff then filed an action under the RIDTPA alleging that Ford Motor Company had engaged in a deceptive trade practice by representing that the vehicle was equipped with the Securilock system. Id. at 690. The plaintiff also sought to join all other individuals who had purchased Ford Rangers and convert his suit into a class action. Id.
The Superior Court dismissed the action in its entirety because the plaintiff had alleged damages totaling $200, well below the $5,000 amount in controversy requirement. The Supreme Court reversed. While the Supreme Court upheld the trial court's dismissal of the plaintiff's general claims for damages, the Court reinstated the plaintiff's claim under the RIDTPA because the statute's plain language "permits a person who sustains any loss capable of measurement, no matter how large or small . . ." to maintain an action. Park, 844 A.2d at 693. Thus, the Supreme Court instructed the trial justice to consider the plaintiff's class claims under the RIDTPA. Id. at 694.
On remand, the trial justice once again dismissed the suit after finding that the plaintiff did not meet the numerosity requirement for class certification. Park v. Ford Motor Company, 928 A.2d 469, 470-471
(R.I. 2007) (Park II). The plaintiff appealed, and — while agreeing that the plaintiff had not fulfilled the numerosity requirement — the Supreme Court for a second time reinstated the plaintiff's claims under the RIDTPA. Id. at 472-473. This time, the Supreme *Page 12 
Court held that even though dismissal of the class claims was proper, the plaintiff's individual claims could still be considered under the RIDTPA. Id.
Granted, our Supreme Court in Park and Park II was not confronted with the question of whether the defendant's car sales activities were exempt from the RIDTPA because they constituted "actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States." Section 6-13.1-4. Yet, on other occasions our Supreme Court has stated that a court's lack of jurisdiction over a controversy can and should be raised on the Court's own motion. Krivitsky v. Town of Westerly, 823 A.2d 1144, 1147 (R.I. 2003) (stating that an appellate court may raise the issue of subject matter jurisdiction at any time). Our Supreme Court has also repeatedly held that it may uphold the ruling of the Superior Court when there are other grounds supporting the ruling, even if the grounds relied on by the trial court are invalid. See State v. Froias, 653 A.2d 735, 739
(R.I. 1995) (quoting State v. Nordstrom, 529 A.2d 107, 111 (R.I. 1987) ("this court on appeal is free to affirm a ruling on grounds other than those stated by the lower-court judge")).
Against this backdrop, it seems unlikely that the Supreme Court would twice reinstate the plaintiff's cause of action if it would later be found that the very same plaintiff lacked standing on other grounds. Rather, one would expect the Supreme Court to have affirmed the trial justice's dismissal, but on the alternate ground that a motor vehicle manufacturer is exempt from suit under the RIDTPA because sales of motor vehicles are subject to regulation by a state or federal agency. The fact that the Supreme Court did not do so — even after presented with the consumer's claim under the RIDTPA on two occasions — would seem to indicate that allegedly deceptive acts in the realm of consumer motor vehicle sales are not exempted from the RIDTPA. *Page 13 
Significantly, the allegations in the matter currently before this Court appear analogous to the allegations in Park. Just as thePark plaintiff had bought a Ranger that Ford represented was equipped with a certain security system, Plaintiff here purchased a vehicle that Subaru had represented to be a 1995 two-wheel drive Impreza, leading Plaintiff to reasonably believe that a transmission for a 1995 two-wheel drive Impreza had been installed in the vehicle. Plaintiff later discovered that the vehicle was not equipped with a transmission for a 1995 two-wheel drive Impreza, similar to the Park plaintiff's discovery that his Ford Ranger did not have the advertised security system installed. Therefore, it appears the same analysis employed by the Supreme Court in Park should apply to this case. Because our Supreme Court implicitly found that the allegedly deceptive conduct in that case was not exempt from the RIDTPA, neither is the similar alleged conduct by Subaru.
It should be noted that Subaru has cited Federal case law in support of its claim that it is exempt from the RIDTPA. In In re New MotorVehicles Canadian Export Antitrust Litigation, 350 F.Supp. 2d 160 (D.Me. 2004), the Maine District Court dismissed claims brought under the RIDTPA by purchasers and lessees of motor vehicles. Plaintiffs in that case claimed that defendant automobile companies and national dealer associations had "conspired among themselves and with unnamed dealers to prevent less-expensive Canadian vehicles from entering the American market." Id. at 167. The Court first stated that the party moving for dismissal bears the burden of showing that its general conduct is governed by statute or regulation; once that has been done, the party opposing the motion must show that the specific conduct at issue is not exempted from the RIDTPA. Id. at 201 (citing State v. Piedmont FundingCorp., 119 R.I. 695, 382 A.2d 819, 822 (R.I. 1978)). The Court went on to state that the conduct at issue in that lawsuit appeared to be governed by the Rhode Island Department of Administration and that the *Page 14 
plaintiffs had not sustained their burden of showing that the exemption did not apply to the specific conduct at issue. Id. Thus, the Court dismissed the claims under the RIDTPA for lack of standing.
That case also appears to be distinguishable on its facts as the allegations involved a supposed conspiracy at the dealer level that resulted in harm to the ultimate consumers. Thus, the general conduct in that case appears to involve the relationship between motor vehicle manufacturers and their franchisees, which is clearly governed by the Motor Vehicle Code § 31-5.1-1 et seq. Here however, the allegedly deceptive conduct does not involve the relationship between Subaru and its franchisees, but rather its alleged failure to disclose to the ultimate consumer that a 1993 model-year transmission had been installed in a 1995 model-year vehicle. This Court finds, therefore, that Subaru has not sustained its initial burden of showing that the general conduct at issue here is governed by the Motor Vehicle Code. It follows that Subaru has not shown that it is exempt from the RIDTPA.
Finally, it should be noted that even if this Court were inclined to accept Subaru's argument that § 31-5.1-1 et seq. exempts its alleged conduct from the RIDTPA, that chapter explicitly provides consumers such as Plaintiff with standing to sue for violations of that chapter. Specifically, § 31-5.1-13, entitled "Civil remedies" provides that,
 [n]otwithstanding the terms, provisions, or conditions of any agreement or franchise or the terms or provisions of any waiver, any consumer who is injured by a violation of this chapter, or any party to a franchise who is so injured in his or her business or property by a violation of this chapter relating to that franchise, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this chapter, may bring a civil action in the superior court to enjoin further violations, and to recover the actual damages sustained by that person together with the costs of the suit, including a reasonable attorney's fee." Section 31-5.1-13(a) (emphases added). *Page 15 
Although the statutory language providing this cause of action does appear to contemplate only actions between and among manufacturers and dealers as causing injury to a consumer, if the Court accepts Subaru's argument that this chapter applies and preempts any action under the RIDTPA, then Plaintiff is clearly provided with a private cause of action to address any alleged violations of § 31-5.1-1 et seq. Although the Complaint invoked this Court's jurisdiction under the RIDTPA, it could easily be amended to invoke the proper jurisdictional grounds.
 Conclusion
Given all of the foregoing, this Court finds that Plaintiff does have standing under the RIDTPA despite the likelihood that he has suffered very little ascertainable monetary damages. Subaru's motion was based solely on its arguments as to standing, and it is therefore irrelevant to this motion whether or not the alleged conduct itself is deceptive as a matter of law.
Even if the Court were to accept Subaru's argument that the alleged conduct is not subject to the RIDTPA because it is governed by the Motor Vehicle Code § 31-5.1-1 et seq., its motion would still be denied because § 31-5.1-13 provides Plaintiff with a private cause of action under that Chapter. Subaru of America's motion for summary judgment is denied.
Counsel shall submit an appropriate order for entry in accordance with this Decision on or before September 10, 2008.
[1] Note that such an interpretation applied to the sale of motor vehicles may deprive a substantial number of individuals of a cause of action under the RIDTPA for otherwise actionable conduct, simply because certain alleged violations of the Act may not be discovered until a motor vehicle has been in use for several years and has already been resold by the original purchaser.
[2] Plaintiff has also informed the Court that the motion justice specifically rejected this argument in denying Subaru's motion to dismiss. Even though the order that entered denied the motion without prejudice, it should be noted that Subaru has presented this Court with the same legal argumentation it brought before the motion justice but has not provided any reason why this Court's conclusion should differ from that of the motion justice.
[3] Note that ensuing chapters define other deceptive acts at the consumer level and provide an injured consumer with a cause of action under the RIDTPA. See § 31-5.3-2 (providing that when dealer fails to insure that a used car has a valid inspection sticker as required under § 31-38-1, an action under the RIDTPA "shall be available to enforce the provisions of this chapter"); § 31-5.4-6 (a dealer's failure to provide a buyer with certain forms relating to a vehicle's warranty coverage is actionable under the RIDTPA). *Page 1