STATE

v.

Christine M. WEBBER.

No. 97–116–C.A.

Supreme Court of Rhode Island.

July 24, 1998.

Annie Goldberg, Aaron L. Weisman, Kath-
leen M. Hagerty, Providence, for plaintiff.

David N. Cicilline, Bristol, for defendant.

Before WEISBERGER, C.J., and
LEDERBERG, BOURCIER, FLANDERS
and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Christine M. Webber (Webber), from a judgment of conviction on one count of arson in the first-degree. Webber raises numerous issues in support of her appeal, including ineffective assistance of trial counsel. Because we are of the opinion that Webber's first argument concerning expert testimony about an arson detecting dog's activities establishes prejudicial error, however, we conclude that it is unnecessary to address most of these arguments. The facts pertinent to this appeal are as follows.

Shortly after 1:30 p.m. on September 13, 1990, Webber was returning from a business meeting in Massachusetts when she stopped at her Coventry residence in order to attend to a personal matter. Thereafter, as she was proceeding to C. Webber Chevrolet, her place of business, Webber unexpectedly encountered her son, Frederick D. Webber (Frederick), and his friend Jeffrey Raymond (Raymond). Following a brief conversation with Frederick, Webber resumed her commute while Frederick and Raymond continued toward the house. As Frederick and Raymond approached the house, each noticed smoke rising from the roof, although they dismissed this observation as nothing important. Upon further investigation, however, Frederick and Raymond realized that something was wrong and that the house was actually filling with smoke. A passerby arrived and informed the two that the fire department had already been called. Furthermore, according to testimony adduced at trial, Webber received a call on her cellular telephone that informed her that her house was on fire.[1] As a result she turned her vehicle around and followed the fire trucks to their destination, whereupon she discovered smoke and fire billowing from her roof.

Investigators soon concluded that the fire had been caused by a deliberate human act and that a flammable substance had been used to ignite the fire in two separate locations in the lower level of the house. The fire was thought to have started at approximately 2 p.m., and it was later learned that the home's fire-detection system had been manually disconnected.

On December 13, 1993, a Kent County grand jury returned an indictment against Webber, charging her with one count of first-degree arson. At trial Webber did not contest the investigators' determination that the fire was of an incendiary origin and, in fact, Webber stipulated that carpet samples taken from her home tested positive for the presence of accelerants. Instead defense counsel proffered a theory that the presence of accelerants had no direct relevance to Webber without first establishing a nexus between her and these accelerants. Mindful of this theory, we note that the decisive moment in this trial occurred when the state attempted to establish this link.

The state presented the testimony of John B. Fiore (Fiore), an investigator in the Rhode Island State Fire Marshal's office, and Thomas Haynes (Haynes), a certified fire marshal in Rhode Island and Connecticut and the current chief of the Western Coventry Fire Department. Webber stipulated that both witnesses were qualified as experts in the field of fire cause and origin. Thereafter, Fiore testified without objection that on September 14, 1990, the day after the fire, a member of the Connecticut State Police and his dog, Matty, assisted in the investigation. According to Fiore, Matty was trained to detect the presence of flammable substances used as fire accelerants. It is significant that the trainer or the curator of the dog did not testify and that the state failed to offer any testimony concerning the dog's training or reliability. Nevertheless, Fiore continued to testify that the dog would alert his handler to the presence of flammable accelerants in the house and that the evidence would be seized and placed in air-tight containers for later testing. According to Fiore, the dog "alerted" in seven or eight different locations in the house.

Fiore also testified concerning an incident he witnessed at approximately 10 a.m. on

---

1. The exact sequence of events with respect to when Webber received this phone call and from whom was disputed by the parties. However, for purposes of appeal this issue is not pertinent.

September 14, 1990, some twenty hours after the fire originated. Fiore testified that Webber consented to a search of her automobile and signed a consent-to-search form. Shortly thereafter Matty conducted a search of Webber's vehicle. Fiore testified that when Matty detects the presence of a flammable accelerant, the dog will indicate an alert by stopping, sitting, and scratching the surface where the flammable liquid has been detected, and that during the search he observed Matty indicate an alert to the front floor mat on the driver's-side of Webber's vehicle. Although defense counsel had not previously objected to the testimony concerning the alerts that had occurred inside the burned dwelling, counsel strenuously objected to the introduction of any evidence concerning the dog's reaction to Webber's floor mat. The mat was seized and subsequently tested by gas chromatograph at the University of Rhode Island Crime Laboratory (crime lab). This test, however, proved negative for the presence of an accelerant.

At trial, the trial justice found that the probative value of Fiore's testimony was not outweighed by its potentially prejudicial effect and that he would be permitted to testify concerning Matty's alert to the floor mat. In addition, the trial justice also allowed Fiore to testify that after Webber observed Matty's alert to the floor mat she became emotional and cried.

Following deliberations, a Kent County Superior Court jury found Webber guilty of first-degree arson. The trial justice sentenced Webber to fifteen years at the Adult Correctional Institutions, with five years to serve, ten years suspended, and ten years probation upon her release. She is presently at liberty on bail pending this appeal.

▬ On appeal the state contends that Webber's first issue concerning the propriety of expert testimony about Matty's activities was not properly preserved for appellate review. We disagree. Although Webber's counsel raised no objection to the testimony concerning the dog's alerts inside the burned dwelling, defense counsel made a lengthy and vigorous argument against the admissibility of any testimony concerning the dog's alert in Webber's automobile. In part defense counsel stated:

"It's a twofold problem involved with Mr. Fiore. This is not his dog. It's a dog brought in by Mr. Haynes.[2] My argument concerning Mr. Fiore concerns the fact not only is this request not proffered by him or initiated as a result of his investigation, he merely happens to be just a bystander to this fact. So insofar as Mr. Fiore is concerned, I would assert that particular point. And restricting him from testifying as to what this dog may or may not have done—keep in mind that we're getting the connection now to the automobile and the house. What happened in the house, and whatever accelerants were discovered, to me has no direct relevance insofar as Christine Webber is concerned, except for the fact that there may be a nexus to the car and the mats.

"That brings us to the second part of the problem that I had discussed at the outset of this case—contamination of evidence. That is the general difficulty I have with allowing this witness *** to testify that on September 14 *** 22 hours after individuals had arrived at the scene and [had access to Webber's car, including Fiore] some period of time after the fire, bearing witness not as the handler of the dog, not as the expert, but someone who bore witness as to what the dog did, and what the dog may have disclosed. I think it's too remote for this particular witness on [sic] this context to be able to testify."

Thus we are satisfied that this issue was properly preserved for appeal and that defense counsel in fact objected to this testimony on two grounds: first, the testimony regarding the positive alert was unreliable and unduly prejudicial because of the possibility that the floor mat may have become contaminated by persons entering Webber's vehicle to use her cellular phone after having traipsed through the fire scene and, second, the state failed to establish a proper founda-

---

**2.** We note that Matty was not Haynes' dog, but was actually brought in by Trooper Lancellotti from the Connecticut State Police.

tion for testimony concerning Matty's actions.

Rule 702 of the Rhode Island Rules of Evidence governs the admissibility of expert-witness testimony and clearly provides that such testimony may be admissible to "assist the trier of fact to understand the evidence or to determine a fact in issue."[3] In the case at bar we have little doubt that testimony concerning Matty's reactions to the presence of accelerants is within the ambit of Rule 702. Nonetheless, even though expert testimony may be helpful to the trier of fact, a foundation is still required for it to be admissible. *See Rodriquez v. Kennedy,* 706 A.2d 922, 924 (R.I.1998); *State v. Wheeler,* 496 A.2d 1382, 1388 (R.I.1985).

During the presentation of its case the state introduced testimony by Fiore and Haynes concerning their opinions about the origin of the fire. Despite the fact that both Fiore and Haynes were qualified as experts in detecting the cause and the origin of fires, both witnesses exceeded their area of expertise and testified regarding Matty's activities. Both witnesses testified that when Matty detects the presence of an accelerant, the dog scratches the floor, sits down, and points to this area with its nose. Fiore and Haynes also testified that on several occasions they witnessed Matty make positive alerts, which indicated the presence of accelerants. This type of testimony concerning the significance of the alerts, as well as other foundational matters that were never established, is within the purview of Matty's trainer or curator, a witness never called by the state to establish the appropriate foundation. Specifically the state needed to establish the expertise of Matty's curator, Matty's background and training, and Matty's general accuracy during investigations. *See State v. Buller,* 517 N.W.2d 711, 714 (Iowa 1994). No such evidence was introduced in this case. We recognize that Webber did not object to the admission of testimony concerning Matty's activities in the house; however, this tactical decision has no bearing on the obligation of the proponent of expert testimony to establish a proper foundation, particularly when made aware by a later objection. The state's failure to establish this foundation constitutes prejudicial error and provides a sufficient basis for this Court to reverse Webber's conviction.

Because we remand this case to the Superior Court for a new trial, we shall briefly address two related issues we deem important. We first address the admission of Fiore's testimony concerning Webber's emotional outburst upon witnessing Matty's alert to the alleged detection of accelerants on her car mat. Although the state sought to introduce this testimony to demonstrate Webber's state of mind, we are of the opinion that this testimony also had the effect of establishing the fact that a flammable accelerant was present on the driver's floor mat and, furthermore, that Webber was responsible for its presence. Although we acknowledge, as did the trial justice, that this ruling represents "a close call," we conclude that considering all the circumstances presented by this case, the probative value of Fiore's testimony is outweighed by the inference-upon-inference theory on which the state attempted to build. *See R.I.R.Evid.* 403.

As defense counsel argued, Webber's emotional outburst may have been the result of a number of plausible explanations, not the least of which concerned the events of the previous twenty hours. Our conclusion is buttressed by the fact that the underlying inference in this theory (that Webber's car mat did contain the presence of an accelerant) is highly suspect since the crime lab test on the car mat proved negative. We are satisfied that the evidence concerning Matty's alert for the presence of a flammable substance on the driver's-side floor mat of Webber's car is evidence bearing directly on the question of guilt. Clearly the jury was asked to conclude that because Matty alerted to Webber's car mat, the dog detected the

---

**3.** In its entirety Rule 702 of the Rhode Island Rules of Evidence provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

presence of an accelerant that had been transferred to Webber's car on the afternoon of September 13, 1990, when Webber ignited the blaze that destroyed her home. The crime lab's negative test result, however, coupled with the state's failure to provide a foundation for Matty's "testimony," along with the myriad potentially nonculpable reasons for Webber's emotional reaction, create far too many inferences in our opinion for this testimony to survive the balancing test required by Rule 403 of the Rhode Island Rules of Evidence.

The second area we shall briefly address concerns Webber's claim that Haynes' testimony that "the dog was more sensitive than the gas chromatograph" constitutes impermissible vouching or bolstering.[4] We agree.

■ "The determination of the truthfulness or credibility of a witness lies within the exclusive province of the jury." *State v. Haslam*, 663 A.2d 902, 905 (R.I.1995). Consequently a witness is not permitted to offer an opinion regarding the truthfulness or accuracy of another witness' testimony, even when the opinion does not literally address the other witness' credibility. *See id.* If the opinion testimony has the same "substantive import" and bolsters another witness' credibility, it is inadmissible. *Id.*

In this case defense counsel elicited testimony from Fiore that even though Matty detected the presence of accelerants on Webber's front floor mat, the crime lab failed to detect the presence of accelerants on the mat by the use of gas chromatograph. At the conclusion of Fiore's testimony, the state called Haynes to the stand, whereupon he was asked, "[A]re you familiar with studies that have been done regarding the accuracies of an accelerant detecting dog versus the gas chromatograph?" Haynes indicated that he was familiar with these studies and further stated,

"Basically, when they first started using the dogs and running the tests, they found that the weak samples that they would use, the dog would pick up on, and when they sent samples to the lab to be tested with

gas chromatograph, it would come back negative. *It very early became clear the dog was more sensitive than the gas chromative testings.*" (Emphasis added.)

■ We conclude that Haynes' testimony constitutes impermissible bolstering of Fiore's testimony concerning the dog's alert and thereby encroaches upon a juror's exclusive territory of determining a witness' credibility. *See generally State v. Brown*, 709 A.2d 465, 479 (R.I.1998); *State v. Miller*, 679 A.2d 867, 872 (R.I.1996).

Accordingly for the foregoing reasons we sustain the defendant's appeal. The judgment of conviction is vacated, and the papers in this case are remanded to the Superior Court for a new trial.

4. We acknowledge that defense counsel failed to preserve this issue for appeal. However, we are cognizant that this issue may once again arise during retrial and, therefore, we address this matter for purposes of judicial economy.