**Supreme Court**

No. 2012-74-C.A.

(K3/11-486A)

State                              :

    v.                             :

Lewis Kausel.                      :


NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                          :

v.                             :

Lewis Kausel.                  :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**    The defendant, Lewis Kausel, appeals from the judgment of conviction on one count of simple domestic assault.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time.  For the reasons set forth in this opinion, we affirm the judgment of conviction.

**I**

**Facts and Travel**

On June 3, 2011, defendant was charged by a criminal complaint with one count of "assault or battery or both" on Patricia Kausel in violation of G.L. 1956 § 11-5-3 "in circumstances which are in violation of the protections offered through the Domestic Violence

Prevention Act," G.L. 1956 § 12-29-5. A five-day jury trial was held in the Kent County Superior Court[1] in October and November of 2011, during which defendant represented himself.

At trial, Ms. Kausel was the first witness to testify for the state. She stated that on June 3, 2011, she was living in East Greenwich with defendant, to whom she had been married for twelve years, and their two children. Ms. Kausel further stated that she had begun the process of seeking a divorce from defendant. Ms. Kausel testified that, at approximately 10 a.m. that morning, she was at home along with defendant and her mother, Barbara Creighan; she explained that she was working from home, as it was her custom to do on Fridays.

Ms. Kausel further testified that, while she was participating in a conference call, defendant was conducting various loud activities—such as mowing the lawn, turning up the volume on the television, and running the washer and dryer. She testified that, when she asked defendant to keep the noise down, he replied in a loud voice: "[Y]ou're telling me to shut up?" When asked to describe defendant's demeanor while she was on the conference call, Ms. Kausel answered that she would describe it as "a little belligerent." She further testified that she terminated the call out of embarrassment and proceeded to take the dog for a walk; she indicated that, at that point in time, defendant was taking a shower.

Ms. Kausel testified that, upon returning from her walk, she saw defendant coming out of the bathroom completely unclothed. She stated that, in an effort to keep defendant out of her mother's sight, she tried "herding him back into the bathroom" so that he could put his shorts back on. Ms. Kausel testified that she did not push or shove defendant; but she agreed that, because they were "in close contact," it was "possible" that she had touched him "without a push

---

[1]     After defendant was charged in Third Division District Court, the case was transferred to the Superior Court pursuant to Rule 23 of the District Court Rules of Criminal Procedure and was prosecuted by the Attorney General.

or a shove." She further testified that she reached down to grab defendant's shorts, and then she remembered a slap to her face. She added that she then dropped the shorts to the floor, ran out of the bathroom, told her mother to return to the master bedroom, and proceeded to call the police. Ms. Kausel told the jury that it was defendant's hand that struck her, leaving a red mark on her face (which mark she testified she saw when she looked in a mirror). The prosecutor also questioned Ms. Kausel with respect to photographs (which were later entered into evidence) of Ms. Kausel depicting the way that her face appeared after the incident, including a photograph of what Ms. Kausel described as a "very clear picture of a bruise on [her] cheek."

Ms. Kausel testified that she would not have fabricated such a story for the purpose of having defendant removed from the home. Thereafter, during cross-examination of his wife, defendant sought to introduce a list in Ms. Kausel's handwriting which included such tasks as calling an attorney, buying a car, and closing various accounts. The defendant contended that the list demonstrated that Ms. Kausel had been taking steps to put herself in the best position with respect to the couple's divorce proceedings. However, the trial justice ruled that defendant was "not going to try the divorce case in this case." The trial justice reviewed the list and then ruled that it had no probative value and would only confuse the jury; consequently, he declined to permit the list to be entered into evidence.

Barbara Creighan, Ms. Kausel's mother, was the next witness to testify about the June 3, 2011 incident. Her testimony corroborated that of her daughter. The state also presented the testimony of three officers of the East Greenwich Police Department. All three of the officers stated that they had responded to the Kausel residence, and they proceeded to testify as to their involvement in the subsequent investigation.

One of the three officers who testified for the state was Lieutenant Matthew Haley. He stated that he received a call at around 10 a.m. on June 3, 2011 directing him to respond to the Kausel residence. He further testified that, upon his arrival, defendant showed him a "small scratch" on his arm that defendant asserted had resulted from that morning's altercation with Ms. Kausel. Lieutenant Haley stated that he then spoke with Ms. Kausel. He further testified that he observed a mark on Ms. Kausel's face. Lieutenant Haley added that, "[Ms. Kausel] seemed to explain some things that I thought made more sense to what had actually occurred."

During cross-examination, defendant asked Lt. Haley if he had considered whether Ms. Kausel's injury had been "self-inflicted"; Lt. Haley answered that that was a possibility. Lieutenant Haley also acknowledged that he knew that defendant had been injured.[2]

The defendant proceeded with cross-examination of Lt. Haley as follows:

> "Q: Lieutenant is it possible that Mrs. Kausel's injury was caused by the scuffle over the shorts in the bathroom?
> "A: I don't believe so.
> "Q: You don't believe so, is that what you said?
> "A: Yes.
> "Q: Why don't you believe that?
> "A: I believe it occurred as she told us.
> "* * *
> "Q: I said did you believe Mrs. Kausel that she had a red mark on her face that she was struck, true?
> "A: Yes, sir, based on my years of experience and saw what I saw that day, yes, I believed she was struck in the face."

On re-direct examination of Lt. Haley by the prosecutor, the following further testimony was elicited:

> "Q: Is it fair to say when you conducted your investigation that whenever you hear from two people two different stories you have to make some credibility determinations?
> "A: Correct.

---

[2]     In the course of the three officers' testimony, certain photographs which portrayed injuries to Ms. Kausel and defendant were entered into evidence.

"Q: And you do that in this case?
"A: Yes.
"Q: And based on all of your experience in domestic violence and domestic allegations did you make a determination in this case after hearing from both parties?
"A: Yes.
"Q: And what was that determination?
      "MR. KAUSEL: I object your Honor.
      "THE COURT: Overruled.  He may answer.
"Q: What was that determination?
"A: I believed, you know, Mr. Kausel was the primary aggressor in this incident * * *."

The state rested its case after Lt. Haley's testimony, and defendant opted not to present any testimony or other evidence.

On November 2, 2011, the trial justice instructed the jury before the closing arguments took place.  Within his instructions, the trial justice addressed the concepts of assault and battery; in pertinent part, he stated as follows:

"An assault is an unlawful attempt, coupled with a present ability, and with the intent to commit a wrongful act, by means of physical force, upon the person of another. In other words, an assault is an unlawful attempt or offer, with force or violence, to do bodily harm to another.
      "A battery is somewhat different.  A battery is the physical result of an accomplished assault; that is to say, the actual striking of the other person; that's a battery."

Immediately after he finished giving his instructions to the jury, the trial justice expressly asked both parties whether there were any objections to the instructions.  Both defendant and the prosecutor stated on the record that they had no objections.  The parties proceeded to make their closing arguments, and the jury then retired to deliberate.

Shortly after the jury began its deliberations, the trial justice received a note from the jury foreperson.  The note asked the trial justice: "If it is an accident can there be intent[?]"  The note also requested the definition of the word "intent."

During a discussion of the jury's note between the parties and the trial justice, defendant filed a motion for mistrial in open court claiming that the trial justice's instructions had "failed to instruct completely on assault and battery"; he elaborated by stating that the trial justice had "stopped short in his instruction to inform the jury of the State[']s obligation in its burden of proof."

Before ruling on defendant's motion for mistrial, the trial justice turned to the question posed by the jury. The prosecutor asserted that general intent was the proper standard, and she asked the court to respond accordingly to the jury's note. The trial justice ultimately decided to wait until Friday, November 4, 2011 to respond to the jury's inquiry, and he allowed the jurors to continue deliberating.

When the jury reconvened on November 4, 2011, the trial justice responded to the question by giving a supplemental instruction. He stated, in pertinent part, as follows:

> "The answer to the question is: It depends. It depends on the crime which is alleged and it depends on what the "accident" was. * * * [T]he alleged crimes are domestic assault and/or domestic battery. The underlying crimes—I only mentioned the word "intent" one time in my original instructions when I defined those crimes. So let me define the type of intent these crimes require; that is, what intent the state must prove beyond a reasonable doubt for conviction here.

The trial justice proceeded to expand on his earlier definition of intent, specifically instructing on the meaning of "general intent." (See Part III A of this Opinion, infra.)

The trial justice then asked the parties if they had any objections to the supplemental instruction. The trial justice denied defendant's request for further instructions and stated that, to the extent that defendant had objected to the supplemental instruction, he overruled his objection.

Ultimately, on November 4, 2011, the jury returned with a verdict of guilty against defendant. After the verdict was rendered, the trial justice reserved judgment on defendant's motion for mistrial until the time of sentencing.

The defendant's sentencing hearing was held on November 22, 2011. At the hearing, the state presented a statement by Ms. Kausel that had been emailed (by Ms. Kausel's sister) to the prosecutor.[3] The prosecutor told the trial justice that she had spoken with Ms. Kausel to confirm that she could not be present at the hearing because of work, but that she wanted the statement to be read. The defendant objected to the reading of the statement, arguing that "if it [was] that important to her she should [have been there]." The trial justice overruled defendant's objection, and he allowed the statement to be read to the court. The defendant also asked if he would receive a copy of what was being read into the record, to which the trial justice responded that he would not because he was "listening to it now."

The prosecutor read to the court Ms. Kausel's statement that defendant had been harassing her as recently as the weekend prior to the sentencing hearing. In addition, Ms. Kausel's statement referenced harassing emails from defendant dating back several months. The defendant again objected. The trial justice overruled defendant's objection and proceeded with the sentencing hearing. At the conclusion of the hearing, the trial justice sentenced defendant to forty days to serve at the Adult Correctional Institutions with one year of probation.[4]

---

[3]     Ms. Kausel was not present at the sentencing hearing.

[4]     The trial justice additionally noted that defendant had not moved for a judgment of acquittal pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure or for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure.

## II

## Issues on Appeal

The defendant timely appealed,[5] asserting that the trial justice erred: (1) by failing to properly instruct the jury as to the elements of the charged conduct, thereby relieving the state of the burden of proving mens rea; (2) in limiting defendant's cross-examination of the complaining witness; (3) in impermissibly allowing a police witness to vouch for the complaining witness's credibility; and (4) in withholding from defendant the statement by Ms. Kausel that had been received by the state after the trial concluded but prior to sentencing.

## III

## Analysis

## A

## Jury Instructions

The defendant argues that the trial justice erred in giving the jury instruction with respect to intent; specifically, defendant contends that the jury instruction "absolved the [s]tate of the burden of proving mens rea." Because defendant did not object to the initial instructions "before the jury retire[d] to consider its verdict" (Rule 30 of the Superior Court Rules of Criminal Procedure), it is clear that defendant has preserved only a challenge to the supplemental jury instruction.

This Court reviews jury instructions in a de novo manner. State v. Lopez, 45 A.3d 1, 22 (R.I. 2012). In undertaking such a review, we look at the entire instruction to the jury in order to "ascertain the manner in which a jury of ordinary intelligent lay people would have understood

---

[5]     Although defendant filed his notice of appeal before the judgment of conviction entered, we consider it, as is our practice, to be timely. See, e.g., Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure; State v. Chase, 9 A.3d 1248, 1252 n.2 (R.I. 2010).

them." Id. (internal quotation marks omitted); see also State v. John, 881 A.2d 920, 929 (R.I. 2005). We will not overturn a challenged instruction so long as it "adequately cover[s] the law." See State v. Delestre, 35 A.3d 886, 891 (R.I. 2012) (internal quotation marks omitted). Even in instances when we conclude that the trial justice erroneously instructed the jury, "reversal is warranted only if a jury could have been misled to the prejudice of the complaining party." State v. Adefusika, 989 A.2d 467, 475 (R.I. 2010) (internal quotation marks omitted). In addition, we have held that "[c]ounsel's objection to the jury instruction must be made before the jury retires because once alerted to the perceived error in the instruction that has been given, the trial justice has an opportunity to cure the alleged deficiencies before the jury retires for deliberations." State v. Viveiros, 45 A.3d 1232, 1243–44 (R.I. 2012) (internal quotation marks omitted); see also Rule 30.

The defendant was charged with simple assault, which this Court has defined as "an unlawful attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness." State v. Lomba, 37 A.3d 615, 620 (R.I. 2012) (internal quotation marks omitted). We have also reiterated that "simple assault is a general intent crime." Id. And we have stated that general intent crimes "require only the intention to make the bodily movement which constitutes the act which the crime requires." State v. Sivo, 925 A.2d 901, 914 (R.I. 2007) (internal quotation marks omitted); see also In re Michael, 423 A.2d 1180, 1183 (R.I. 1981) (discussing the difference between general and specific intent crimes). The trial justice stated in the supplemental instruction, in pertinent part, as follows:

> "Assault and battery are both general intent crimes in our state. These crimes require only the intent to make a bodily movement which constitutes the acts which the crime requires. Because you asked about accident let me add that the amount of intent to make the bodily movement which constitutes the act which the crime requires, is what the state must prove; nothing

more. The state is not required to prove that [defendant] specifically intended the precise harm."

"* * * Intent simply means a state of mind with which an act is done * * *. [A]n assault is an unlawful attempt or offer with force or violence to do bodily injury to another person. The state does not have to prove that serious bodily harm actually resulted from the alleged assault." (Emphasis added.)

The defendant correctly points out that the state was required to prove <u>mens</u> <u>rea</u>; however, we do not agree that the trial justice's instruction absolved the state of that burden of proof. Instead, with respect to general intent, he instructed (in language which very closely tracks what this Court has said about what general intent crimes require) as follows: "These crimes require only the intent to make a bodily movement which constitutes the acts which the crime requires." <u>See</u> <u>Sivo</u>, 925 A.2d at 914. In this case, we perceive no error in the trial justice's instruction on intent; he adequately instructed that there need be an intent to make a bodily movement, but not an intent to cause a specific harm. <u>See</u> <u>id.</u> The jury could not have convicted defendant without finding that he intended to make such a bodily movement in an "unlawful" manner. Accordingly, we hold that the instruction adequately covered the law. <u>See</u> <u>Delestre</u>, 35 A.3d at 891.

**B**

**Limitation on Cross-Examination**

The defendant contends that, when the trial justice refused to allow him to question Ms. Kausel about a list that she had prepared, he thereby erroneously limited defendant's constitutional right to cross-examination. The state argues in response that the trial justice's limiting of defendant's cross-examination was within the discretion accorded to him by Rule 403 of the Rhode Island Rules of Evidence.

We have recognized that there is a "fundamental right to cross-examine guaranteed by the Sixth Amendment to the Constitution of the United States and art. I, sec. 10, of the Rhode Island Constitution * * *." State v. DeBarros, 441 A.2d 549, 551 (R.I. 1982); see also State v. Drew, 919 A.2d 397, 411 (R.I. 2007). And we have emphasized that the "right of cross-examination is guaranteed to a criminal defendant because it is the principal means by which the credibility of the witness and the truthfulness of his [or her] testimony can be tested." See State v. Tiernan, 941 A.2d 129, 133 (R.I. 2008) (internal quotation marks omitted). But we have also noted that the right to cross-examination is not unlimited. See, e.g., Drew, 919 A.2d at 411 ("[The] right to cross-examination * * * is not unbounded."). A trial justice "must not unduly restrict a defendant's right to cross-examine," and we review a trial justice's determination to limit cross-examination for an abuse of discretion. State v. Anthony, 422 A.2d 921, 924 (R.I. 1980). We have also noted that the "discretionary authority to limit cross-examination comes into play [only] after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment." State v. Parillo, 480 A.2d 1349, 1357 (R.I. 1984) (internal quotation marks omitted); see also Tiernan, 941 A.2d at 134.

We have also stated that "[i]rrelevant questions and lines of questioning that offer to produce no probative evidence need not be permitted by the trial justice and may be properly limited." State v. Gasparico, 694 A.2d 1204, 1208 (R.I. 1997). We note that the list defendant sought to introduce into evidence, which he contended indicated that Ms. Kausel's actions on the date of the incident were "premeditated," contained items such as purchasing a car, closing certain bank accounts, contacting an attorney, and other various items. We agree with the trial justice that that list was not probative and would likely have served only to confuse the jury.

Accordingly, we hold that the trial justice did not abuse his discretion in limiting defendant's cross-examination of Ms. Kausel by excluding the list.

C

**The Defendant's Contention About Improper Vouching**

The defendant asserts that the trial justice erred in allowing Lt. Haley to express his opinion that defendant had been the aggressor; defendant contends that Lt. Haley thereby engaged in impermissible vouching by stating that he believed Ms. Kausel's version of events. The state argues that it was defendant's cross-examination of the officer that initially elicited the opinion testimony complained of, and it also contends that the trial justice did not err in allowing the state to return to the topic with the witness after defendant had opened the door to same.

We have held that "a witness is not permitted to offer an opinion concerning the truthfulness of the testimony of another witness." Drew, 919 A.2d at 412 (internal quotation marks omitted). That restriction on the permissible scope of testimony is related to the principle that the "determination of the truthfulness or credibility of a witness lies within the exclusive province of the jury." Id. (internal quotation marks omitted). In addition, such opinion testimony about another's truthfulness is impermissible "even when the opinion does not literally address the other witness'[s] credibility." State v. Webber, 716 A.2d 738, 742 (R.I. 1998). After determining that "certain testimony constitutes impermissible 'bolstering' or 'vouching,' our task in reviewing a trial justice's decision to admit such testimony is to determine whether the admission of the testimony constituted prejudicial error with respect to the defendant."

- 12 -

Adefusika, 989 A.2d at 476. In this case, we shall assume without deciding that the elicited testimony of the lieutenant constituted impermissible vouching or bolstering.[6]

After a careful review of the record in this case relative to what led up to the introduction of Lt. Haley's challenged testimony, we hold that the admission of this testimony did not constitute prejudicial error with respect to this defendant. See Adefusika, 989 A.2d at 476. The defendant himself asked Lt. Haley who he believed had committed the assault, and he explored Lt. Haley's beliefs about the perpetrator of the assault during his cross-examination of the officer. Moreover, he objected to only one of the many statements about that issue during Lt. Haley's testimony on re-direct examination. In light of the testimony elicited from Lt. Haley by the questions posed by defendant while cross-examining him, it is our view that defendant could not have been prejudiced by questioning along those same lines during re-direct examination. See id.

### D

### The Use of Ms. Kausel's Statement at Sentencing

Finally, defendant contends that the trial justice erred in proceeding with defendant's sentencing after refusing to allow defendant to see or examine Ms. Kausel's statement that was read to the court at the sentencing hearing. The defendant argues that, because of that alleged error, defendant's sentence should be vacated and the case should be remanded to the Superior Court "to permit him to have access to the letter prior to any further sentencing proceedings."

---

[6] We note that the state does not assert that Lt. Haley's testimony was proper; in fact, it limits its counterargument on appeal to the following contention: "Defendant has no meritorious ground for appeal on [the improper vouching or bolstering] point even if all of Lieutenant Haley's testimony (on both cross and redirect) concerning whom Haley believed should have been excluded."

In this case, the defendant concedes that the alleged error occurred <u>after</u> the verdict had been rendered and at the sentencing phase. In support of his argument, the defendant has cited to only one case, <u>State v. Stravato</u>, 935 A.2d 948 (R.I. 2007). In view of the fact that <u>Stravato</u> was decided under Rule 16 of the Superior Court Rules of Criminal Procedure, we conclude that the defendant is essentially arguing that, pursuant to Rule 16, he was entitled to see the statement prepared by his wife that the prosecutor read into the record at the sentencing hearing. Assuming <u>arguendo</u> that Rule 16 applied to this statement and that this was a violation of that rule, the defendant has failed to point to <u>any</u> prejudice arising from Ms. Kausel's email having been read into the record rather than having been marked as an exhibit or otherwise provided to him. <u>See generally</u> <u>State v. Pona</u>, 810 A.2d 245, 250 (R.I. 2002) ("Even if [the state's conduct with respect to the statement] violated Rule 16, sanctions would not be warranted unless the violation prejudiced the defendant."). Accordingly, we see no merit in the defendant's argument.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the Superior Court's judgment of conviction. The record in this case may be returned to that tribunal.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    State v. Lewis Kausel.

**CASE NO:**    No. 2012-74-C.A.
(K3/11-486A)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    June 19, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**    Kent County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Jeffrey A. Lanphear

**ATTORNEYS ON APPEAL:**

For State:  Lauren S. Zurier
           Department of Attorney General

For Defendant:  Thomas M. Dickinson, Esq.