November 27, 2018

**Supreme Court**

No. 2017-306-C.A.

(N2/16-192A)

State                              :

v.                              :

James Dalton.                              :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| State | : |
| v. | : |
| James Dalton. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The defendant, James Dalton, appeals from a Superior Court judgment of conviction on one count of second-degree sexual assault, for which the trial justice sentenced the defendant to ten years, with the entirety of the sentence suspended, with probation. On appeal, the defendant asserts that the trial justice erred when he allowed testimony by the responding officer in which he commented on the complaining witness's credibility, arguing that this testimony was impermissible bolstering or vouching of the witness's credibility. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**Facts and Procedural History**

On the morning of September 5, 2015, Jonathan,[1] his girlfriend Amanda, and eight to ten friends drove from Connecticut to Newport to celebrate Amanda's birthday. At the time, twenty-four-year-old Jonathan worked part-time as security at a hospital, attended school for HVAC technician training, and was a member of the Army National Guard. When the group of friends left for Newport at around 8 a.m., Jonathan had just ended a shift at the hospital, which had started at midnight.

The group arrived in Newport around 11 a.m. and went to lunch at a local restaurant. After lunch, the group split up; the women went shopping, and the men went to an Irish pub a couple of blocks away. A few hours later, the group convened again and decided to drive to a nearby beach. Amanda drove Jonathan and three other friends. On the way, Jonathan and Amanda quarreled. Jonathan testified that, when the car stopped at a red light, he "exited the vehicle to cool down." Not familiar with the area, he started walking "aimlessly" because he did not know where he was and then stopped at a liquor store and bought a beer and a "nip" of alcohol.

Around 3 p.m., Jonathan sat down to cool off in a park. Jonathan testified that families and dogs were running around in the park and people were playing tennis at courts nearby. He drank the nip and the beer, which brought his total alcohol consumption that day to approximately six drinks. Tired from his late-night hospital security shift, Jonathan pulled his hat over his head and fell asleep under a tree.

---

[1] We will refer to the complaining witness and his girlfriend by their first names to protect their privacy; no disrespect is intended.

When Jonathan woke up, it was nighttime. He explained that he felt a bit hazy at first, but that he quickly became clearheaded. Jonathan testified that when he awoke, a man was hovering over him with his hands down Jonathan's shorts, fondling Jonathan's genitals and muttering repeatedly, "Yeah, motherfucker." At trial, Jonathan identified defendant as the man who had touched him in the park.

Jonathan testified that he pushed defendant away from him. As he shoved defendant, Jonathan saw that defendant had been touching his genitals, with his hands in his own pants, while fondling Jonathan.[2] Jonathan testified that defendant began to run away from him, towards the tennis courts. Jonathan tackled defendant to the ground, punched him in the head several times, and yelled, "Call the cops." Jonathan testified that defendant was trying to talk to him, telling Jonathan that he was just trying to wake him up. Two people playing tennis at the nearby court heard Jonathan and called the police.

A few minutes later, the police arrived, one of whom was Russell Carlone, who was at that time a captain with the Newport Police Department.[3] Jonathan told the police officers what had happened at the park, and he was brought to the police station to write a witness statement. Carlone testified that, when he and a fellow police officer first arrived at the scene, he initially heard yelling, and then as he got closer, he observed a younger man holding down an older man. As the officers approached the two men, Carlone testified, the younger man was "very, very upset" and was "crying and screaming[.]" Carlone and the other officer separated the two men. Carlone spoke with Jonathan. Carlone testified that Jonathan said repeatedly, "He touched me."

---

[2] The transcript indicates that Jonathan testified that defendant had his "hands" down Jonathan's shorts, and also that defendant had his "hands" down his own pants. No explanation for the use of the plural is given.

[3] Although he was still on the job at the time of defendant's arrest, Carlone was retired from the police department when he testified at trial.

When Carlone asked Jonathan what happened, Jonathan said he was sleeping in the park and woke up to defendant "on top of him" with "his hand down his pants" and said continually, "Oh yeah, mother[fucker]."

Carlone also questioned defendant at the scene. From that conversation, Carlone learned that defendant had seen a person lying down in the park, left his car to check on the person, tried giving the person verbal commands, and when that was unsuccessful, tried to wake the person by shaking him. The defendant also told Carlone that, when Jonathan woke up, Jonathan attacked defendant, placed him in a headlock, and pinned him to the ground. The defendant, in his conversation with Carlone, denied touching Jonathan inappropriately or putting his hands down Jonathan's pants. After speaking to defendant, Carlone asked Jonathan to tell his story once again. Carlone testified that Jonathan's second telling was consistent with the first. Carlone testified that, although Jonathan was emotional the entire time they were speaking, Carlone was able to understand his story.

After a two-day trial, the jury found defendant guilty on the single count charged: second-degree sexual assault, in violation of G.L. 1956 § 11-37-4. On January 18, 2017, the trial justice denied defendant's motion for a new trial. On April 6, 2017, the trial justice sentenced defendant to ten years, suspended, with probation, and ordered defendant to register as a sex offender and receive appropriate counseling. The defendant filed a timely notice of appeal from his conviction on April 25, 2017.

## II

## Standard of Review

Issues concerning the admission or exclusion of testimonial evidence reside within the bailiwick of the trial justice, and we shall not ascribe error thereto absent an abuse of discretion.

*State v. Peltier*, 116 A.3d 150, 153 (R.I. 2015). Because the determination of a witness's credibility "lies within the exclusive province of the jury[,]" however, testimony by one witness that bolsters or vouches for the truthfulness or accuracy of another witness's testimony is impermissible. *State v. Adefusika*, 989 A.2d 467, 476 (R.I. 2010). Testimony is bolstering or vouching if "the opinion testimony has the same substantive import as if it squarely addressed and bolstered another witness's credibility * * *." *Jaiman v. State*, 55 A.3d 224, 231-32 (R.I. 2012) (quoting *State v. Rushlow*, 32 A.3d 892, 899 (R.I. 2011)). We review a trial justice's admission of impermissible "bolstering" or "vouching" to "determine whether the admission of the testimony constituted prejudicial error with respect to the defendant." *Adefusika*, 989 A.2d at 476.

### III

### Discussion

The sole issue on appeal is whether the trial justice erroneously permitted Captain Carlone to offer an opinion on the credibility of the complaining witness. The defendant argues that the following testimony by Carlone, highlighted in italics, constituted impermissible bolstering or vouching:

| "[THE STATE:] | Now, you said that [Jonathan] told you he had some drinks. Did you detect anything on him with regard to alcohol? |
|---|---|
| "[CARLONE:] | I did not smell any alcohol on his breath. I was clearly looking to see his condition when he gave me this story, *and it was my judgment that he had just woken up from a deep sleep and been assaulted*— |
| "[DEFENSE COUNSEL:] | Objection. |

| "THE COURT: | Overruled.  You may finish your answer. |
|---|---|
| "[CARLONE:] | And had woke [*sic*] up to this ongoing assault and was emotional and upset but not intoxicated. |
| "[THE STATE:] | No further questions, Judge." |

The defendant argues that Carlone's testimony should be considered impermissible vouching or bolstering of Jonathan's testimony because Carlone offered his opinion as to Jonathan's truthfulness.  Testimony is considered impermissible vouching or bolstering when "one witness offer[s] an opinion regarding the truthfulness or accuracy of another witness'[s] testimony."  *State v. Lassiter*, 836 A.2d 1096, 1107 (R.I. 2003) (internal quotations omitted) (quoting *State v. Webber*, 716 A.2d 738, 742 (R.I. 1998)).  The witness need not "literally state an opinion concerning the credibility of another witness's testimony" for the court to consider the statement impermissible bolstering.  *Id.*  Rather, the statement is inadmissible if it has the same "substantive import" as bolstering or vouching for another witness's credibility.  *Id.*; *see also Adefusika*, 989 A.2d at 476.

The state argues that, in the first instance, defendant failed to properly preserve this objection for appeal because defendant did not provide a specific basis for the objection at trial. For his part, defendant, pointing to Rule 103(a)(1) of the Rhode Island Rules of Evidence, avers that a stated specific basis is required only "if the specific ground [for objection] was not apparent from the context[.]"  R.I. R. Evid. 103(a)(1).

Under this Court's well-established "raise-or-waive" rule, a specific objection is required to preserve an issue for appellate review.  *State v. Perry*, 182 A.3d 558, 573 n.8 (R.I. 2018). That is, if an issue was not preserved at trial by "*specific* objection," then this Court may not consider the issue on appeal.  *State v. Pona*, 66 A.3d 454, 468 (R.I. 2013) (quoting *State v.*

*McManus*, 990 A.2d 1229, 1237 (R.I. 2010)).  This Court "require[s] a specific objection so that the allegation of error can be brought to the attention of the trial justice, who will then have an opportunity to rule on it."  *Id.*

Carlone testified that it was his "judgment that [Jonathan] had just woken up from a deep sleep and been assaulted[.]"  The defendant objected to this statement, but failed to provide any specificity as to the nature of his objection.  The defendant argues that the nature of his objection was clear from the context because he objected at the precise moment that bolstering or vouching occurred.

After reviewing the record, however, we are of the opinion that the basis for defendant's objection was not clear from the context of the state's questioning.  Merely objecting at the precise point of testimony at which the alleged impermissible bolstering or vouching occurred—without more—does not sufficiently alert a trial justice to a potentially prejudicial evidentiary issue.  *See Pona*, 66 A.3d at 469; *but cf. State v. Offley*, 131 A.3d 663, 670 (R.I. 2016) (finding counsel's repeated attempts to explain his objection's rationale, despite never actually articulating them, to be sufficiently focused in context of that case to preserve evidentiary objections for review).

Here, defendant objected after Carlone had responded, "it was my judgment that he had just woken up from a deep sleep and been assaulted[,]" to the state's unrelated question, "Did you detect anything on him with regard to alcohol?"  Significantly, following his objection, defendant did not move to strike Carlone's answer or pass the case.  If a general objection at a precise moment were sufficient to constitute a "specific objection," a trial justice would be required to divine the reason for the objection, essentially reading the mind of the objecting counsel.  Also, if every well-timed "Objection" could be considered as a specific objection, the

specificity requirement would be rendered meaningless. We therefore conclude that defendant's mere "Objection," without providing any detail as to its basis, did not suffice to preserve the issue of the admissibility of Carlone's testimony for our substantive review.

Even if the issue had been properly preserved, however, we would conclude that the admission of Carlone's testimony did not constitute prejudicial error. As noted above, to successfully challenge a trial justice's admission of evidence as impermissibly bolstering or vouching, a party must demonstrate not only that such bolstering or vouching actually occurred, but also that it "constituted prejudicial error with respect to the defendant." *State v. Kausel*, 68 A.3d 524, 532 (R.I. 2013) (quoting *Adefusika*, 989 A.2d at 476).

Assuming without deciding that Carlone's testimony constituted impermissible bolstering or vouching, we are convinced that the admission of this testimony did not amount to prejudicial error in this case. The statement at issue was brief and without follow-up. Unlike in *State v. Brash*, 512 A.2d 1375 (R.I. 1986), where the bolstering testimony of two witnesses, an FBI agent and a state police lieutenant, was pointedly "offered for the purpose of supporting [the witness's] credibility," *Brash*, 512 A.2d at 1381, here, Carlone's brief statement was a non-responsive answer to the state's inquiry as to whether Carlone smelled alcohol on Jonathan's breath. The state was not asking whether Carlone thought Jonathan had been assaulted.

Moreover, Jonathan was subject to intense cross-examination at trial, providing the jury with its own opportunity to assess Jonathan's credibility. *See Rushlow*, 32 A.3d at 900 (holding that the admission of impermissible vouching or bolstering was not prejudicial error because of "the jurors' sufficient opportunity to judge [the complaining witness's] truthfulness" through cross-examination). Also, the trial justice provided detailed jury instructions, including a reference to Carlone's testimony, with specific instructions that the jury not afford a police

officer's testimony "any more credibility or less credibility merely because that person is a police officer." Thus, the jury had "ample opportunity to form an independent opinion about [Jonathan's] credibility[.]" *State v. Higham*, 865 A.2d 1040, 1046 (R.I. 2004). We conclude that, even if this issue had been properly preserved for appellate review, no reversible error occurred in the admission of this testimony.

## IV

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of conviction. We remand the papers in the case to the Superior Court.

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | State v. James Dalton. |
| **Case Number** | No. 2017-306-C.A.<br>(N2/16-192A) |
| **Date Opinion Filed** | November 27, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Stephen P. Nugent |
| **Attorney(s) on Appeal** | For State of Rhode Island:<br><br>Christopher R. Bush<br>Department of the Attorney General<br>For Defendant:<br><br>Angela M. Yingling<br>Office of the Public Defender |